(42 App. Div. 306.)

PEOPLE ex rel. MILLER v. ELMENDORF.

(Supreme Court, Appellate Division, Third Department.   June 6, 1899.)

MUNICIPAL CORPORATIONS — POLICE OFFICERS — DISMISSAL — SUFFICIENCY OF CHARGES.

Specifications charging a police officer with violation of police rules by "drinking intoxicating liquors while on duty; in being intoxicated while on duty; in entering while on duty, and when not in discharge of duty. * * * places where intoxicating liquor was sold,"—are insufficient, as they do not allege when and where the alleged violation of rules occurred.

Hiram H. Miller was discharged from the office of policeman in the city of Ithaca in proceedings had before William C. Elmendorf, mayor, and brings certiorari.  Order of dismissal reversed.

The relator is an honorably discharged soldier, who served in the Union army during the war of the Rebellion, and had never served in the Confederate army.   He passed the civil service examination for the position of police officer in the city of Ithaca, and was appointed as such police officer on or about the 6th day of October, 1896.   On the 1st day of April, 1899, an order was served upon him, signed by the defendant as mayor of the city of Ithaca, to show cause before the said mayor on the 3d day of April, 1899, at 3 o'clock in the afternoon, why he should not be discharged from the police force of the city of Ithaca; that such order contained the following recital: "Whereas charges against you, alleging you to be physically and morally incompetent properly to fulfill and discharge the duties incumbent upon you as a police officer of the city of Ithaca, N. Y., and alleging neglect of duty and violation of police rules in the following manner, to wit:  In drinking intoxicating liquor while on duty; in being intoxicated while on duty; in entering while on duty, and when not in discharge of your duty as a police officer, places where intoxicating liquor was sold; in neglecting your duty as a police officer, in absenting yourself from your beat while on duty, etc.,—have been addressed to me," etc. The relator appeared before the mayor at the time and place specified, attended by counsel.   The notice served upon the relator, containing the recital of charges as above set forth, constituted the only charge against the relator. The relator made several preliminary objections to such charges, among others, that neither time nor place, when or where, he was guilty of misconduct or neglect of duty, or violation of the police rules of the city of Ithaca, was specified in the notice served upon him.   Such objections were all overruled, and the hearing proceeded with.   Thereafter, and on the 8th day of April, 1899, the defendant, as mayor, made a decision and order which, after reciting a section of the charter of the city as to the power of the mayor to examine into all complaints against subordinate officials of the city, is as follows: "I have

been fair and deliberate in giving you a hearing upon the charges now well known to you. I have also considered the case in all its aspects, and I now adjudge you guilty of all the charges for which you have been tried, except the one relating to your physical incapacity; and I therefore forthwith discharge you from the police force of the city of Ithaca, N. Y., and from your position as a police officer of said city." The relator thereupon brought these proceedings to review the action of the defendant, as mayor, in discharging and removing him from the police force of the city of Ithaca.

Argued before LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

F. E. Tibbetts, for appellant.

Edward J. Mone, for appellee.

HERRICK, J. Section 1 of chapter 821 of the Laws of 1896, being an act to amend chapter 312 of the Laws of 1884, provides:

"No person holding position by appointment or employment in the state of New York, or of the several cities, counties, towns or villages thereof, and receiving a salary or per diem pay from the state, or from any of the several cities, counties, towns and villages thereof, who is an honorably discharged soldier, sailor or marine, having served as such in the Union army during the war of the Rebellion, and who shall not have served in the Confederate army or navy, shall be removed from such position or employment except for incompetency or misconduct shown, after a hearing upon due notice, upon the charge made, and with the right to such employé or appointee to a review by writ of certiorari."

It is unnecessary to review the provisions of the constitution and the various statutes that have been enacted in reference to the soldiers and sailors of the war of the Rebellion. The statutes prior to the last amendment of the constitution were for the purpose of giving them a preference in appointment. This intent of the statutes was embodied in section 9 of article 5 of the constitution. It was also supposed that the statutes existing prior to 1896 insured permanency in their tenure of office after appointment, and that they could only be removed for misconduct or incompetency; but the weakness of the statutes to protect them was revealed by the case of People v. Morton, 148 N. Y. 156, 42 N. E. 538, where it was held that, under the then existing statutes, no notice or opportunity to be heard was required to be given to the person whose removal was contemplated; and it was to remedy the weakness thus revealed in the statute that chapter 821 of the Laws of 1896 was enacted. A public position held by a veteran of the late war has been, by the constitution and the statutes, placed under the protection of the law. It is something that he now has a right to, so long as he is competent to discharge the duties of the place and conducts himself in a proper manner; and he can only be deprived of it after a trial upon a charge or charges preferred, and a conviction upon such charge or charges. People v. Humphrey, 156 N. Y. 231, 50 N. E. 860. While these trials or hearings upon such charges must necessarily be somewhat summary in their nature, and are not conducted with the same precision and exactitude as trials upon indictments for crime, and the same strict rules of evidence will not be applied as in trials before jurors, yet as the proceedings are quasi criminal in their nature, and valuable rights of the accused official are at stake, as well as his good name, the same safeguards

that are used to protect good name, fame, property, or person, in courts of justice, should in substance be observed in these proceedings. The person accused should be sufficiently apprised of the charges against him to be enabled to prepare his defense. Not only should the charge be definite as to its character, but, where it consists in an act done or omitted to be done, the time and place of such act or omission to act should be stated with sufficient certainty to enable the party charged to be prepared to meet it; and also that the record of one trial may prevent his being harassed by a second trial or investigation upon the same charge, as an indictment should be sufficiently definite and specific in its charge to enable a person tried upon it to assert such indictment and trial in bar of a second trial for the same offense.

In the case before us, the charges are very general in their character. Neither time nor place, nor any proximate time or place, when or where the alleged misconduct took place, is stated. Under these charges, the accused is compelled to be prepared to account for his conduct during every day that he has been in office. This is illustrated by what took place upon the trial in this matter. The prosecution gave evidence that the relator was seen in a lunch wagon with a woman whose reputation was bad. One of the witnesses by whom this was attempted to be proved was asked the following question: "Q. Within the year have you seen Mr. Miller in a lunch wagon here on Tioga street, in the city of Ithaca?" This was objected to by the relator, the objection overruled, and the witness answered "Yes, sir." And, further answering, said: "I cannot say what month it was. I think it was in 1898. I couldn't say whether winter or summer. There wasn't any snow on the ground. I should say it was within a year." A female witness was asked whether the relator had been in the habit of calling at her house after 6 o'clock in the afternoon. She testified: "He has not called within the last year." She was asked as to whether he had called within the last two years, to which she answered, "Yes, quite often, between 11 and 1 o'clock at night." She also testified that he had brought liquor with him, and drank it at her house; that he had often drunk liquor at her house. She could be no more definite, except that he had been at her house in July, August, and September of the year 1897. Evidence was also given of the relator's being in the house of a disreputable woman, doing tricks with cards there; and the witness was asked the following question: "Have you ever seen Officer Miller in Ida Lett's house between the hours of 6 o'clock in the evening and 6 o'clock in the morning, while on duty?" This was objected to, because no specific charge of that kind had been made, and the witness' attention had not been called to the time or place. The objection was overruled, and the witness answered: "Yes, sir. I couldn't state the date nor the month. It was within the last six months." Again the witness answered, "All these occasions have been within the year." Evidence was also given in relation to the relator's being seen within a saloon known as the "Hole in the Wall." The witness was asked, "Have you seen Officer Miller in this saloon within the last six months, between 6 o'clock in the evening and 6 o'clock in the morning, while he was on duty?"

This was objected to, and the objection overruled, and the witness answered: "Yes, sir. I couldn't state time or the month. It was within six months." None of these witnesses were able to specify more particularly the occasions when they saw the relator in these places. There are a number of other instances of a like character that appear in the case. The extreme difficulty of defending against charges so indefinite is apparent, and the evidence received under these charges illustrates the propriety of charges being more specific and definite in their nature than those now before us. I do not mean to say that in all instances a specific time or place must be alleged, and proved as alleged, but the time and place should be at least approximately stated, and the time or times upon or between which the offenses are alleged to have occurred should be stated within reasonable limits, so that the party accused may be apprised with reasonable certainty of what he must be prepared to meet. A charge, although it specifies the particular kind of offense, is not a definite charge when it specifies neither time nor place; and, under the statute first above cited, a person can only be removed upon a definite charge.

The proceedings of the defendant should therefore be reversed, and the relator restored to his position as an officer of the police force of the city of Ithaca, with $50 costs and the disbursements of this appeal. All concur.