(96 App. Div. 249.)

. PEOPLE ex rel. SCHAUWECKER v. GREENE, Police Com'r.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

1. MUNICIPAL CORPORATIONS—POLICE DEPARTMENT—CHARGES AGAINST POLICEMAN—TRIAL.
    In the trial of charges against a policeman, it was improper for two deputy commissioners to act alternately as accuser, witness, prosecutor, and judge.

2. SAME—REFUSAL TO TESTIFY.
    A police commissioner, while acting as a judge for the purpose of hearing charges against a policeman who had been suspended from duty, ceases to act for the time being as accused's superior officer, so that accused was not guilty of insubordination for refusing to testify under advice of counsel, in violation of the commissioner's direction.

3. SAME—ACCEPTANCE OF MONEY—FAILURE TO PROSECUTE DONORS.
    Relator, a policeman in charge of a school of instruction, had no knowledge that an envelope containing money had been left at his home, addressed to his wife, intended as a present from his class, which had been discharged, until the day before he was cited to appear before a police commissioner to explain the same, which he did, and within an hour after such explanation he was suspended while he was engaged at such school, after which he was not in a position to prefer charges. Held, that relator's neglect to prefer such charges against the members of the class that had made up the purse was not ground for dismissal.

Certiorari by the people, on relation of Charles L. Schauwecker, against Francis V. Greene, as police commissioner of the city of New York, to review relator's dismissal from the police force. Writ sustained.

The relator, a sergeant, was found guilty upon the two charges that, while on trial, June 5, 1903, he refused to obey the order of Deputy Commissioner Davis to testify, and that, having knowledge that a collection for an unauthorized purpose had been or was being made by members of the "School of Instruction" which he was conducting, neglected to prefer charges against the members.

Prior to the making of the charges upon which he was dismissed, the relator, on May 14, 1903, was charged by Deputy Commissioner Piper with having, while conducting the school of instruction on April 3, 1903, accepted in the armory of the Sixty-Ninth Regiment, from a member of the school, Joseph C. Hickey, a sum of money as a present. A trial upon this charge was had be-

fore Deputy Commissioner Davis, at which Joseph C. Hickey and another
member of the school, George Schneider, testified on behalf of the prosecution.
Thereupon the prosecution called the relator. The relator rose, but his attor-
ney immediately objected to his testifying, and stated that under advice of
his counsel the relator refused to be sworn, and the relator was not sworn.
The prosecution rested, and then the relator's attorney called the relator, and
he was questioned as to receiving the money from Mr. Hickey, and denied the
accusation, and stated in effect that money was left in an envelope at his
house for his wife. The relator was cross-examined at length. As the re-
sult of the trial he was found "not guilty as charged," and the complaint was
dismissed.

After the trial another charge was preferred against the relator, and this
time by Deputy Commissioner Davis, that during the trial of the charges
against him before Deputy Commissioner Davis, when ordered by him to be
sworn on behalf of the prosecution, he disobeyed said order, and refused to be
sworn as such witness. This charge was tried before Commissioner Piper,
Deputy Commissioner Davis appearing as witness against the relator. Deci-
sion was reserved, and subsequently the relator was found guilty, and this
charge formed one of the two upon which he was dismissed.

Finally the relator was charged by Deputy Commissioner Piper with three
specifications of neglect of duty: (1) That while in charge of the school of in-
struction he permitted members to take up a collection for an unauthorized
purpose, in violation of the rules of the department, in the armory of the
Sixty-Ninth Regiment, on or about April 3, 1903; (2) that, having knowledge
that such collection had been or was being made, he neglected to take any ac-
tion to prevent the same; and (3) that, having knowledge that such collection
had been or was being made, he neglected to prefer charges against the mem-
bers of the school of instruction who were guilty of violating the rules relative
to making assessments. Upon the first and second of these specifications the
relator was found not guilty; but he was found guilty upon the third, and this
forms the second charge upon which he was dismissed.

With respect to this second charge, which was tried before Deputy Commis-
sioner Davis, we have the testimony of Commissioner Piper, the relator, a
stenographer, Officer Hickey, and Officer Schneider. The latter testified that
a collection had been taken up by the men in the school of instruction, and
the $51 so obtained was put in an envelope, and he gave it to Officer Hickey
in the street, opposite the Sixty-Ninth Regiment Armory, on April 3, 1903, and
he did not know what Hickey did with it, but he never received any of it back.
Officer Hickey testified that on April 3d he received from Officer Schneider an
envelope, but he did not know what was in the envelope, but he gave it to the
relator on the floor of the armory; that he had personally given a dollar to
Schneider for a general collection for a present, for whom he does not say.

The relator testified that he was a sergeant on the force for 29 years, with a
clear record and in charge of the school of instruction; that he did not have
any knowledge that any collection was being taken, and did not allow any
such collection prior to or on April 3, 1903, and that the first intimation of
such collection he received on April 4, 1903, in conversation with Commis-
sioner Piper, and within one hour thereafter he was suspended from duty, and
during that hour was with another class in the school of instruction, and that
he has been suspended ever since, and understands that during such time an
officer has no right to perform police duty, and for that reason he had made
no charges against others; that he received no envelope containing money from
Hickey, although at various times he had received other envelopes from him;
that he told Commissioner Piper that an envelope had been left in the letter
box of his house, directed to his wife, and at that time the class of the school
had been appointed and gone; that he did not ascertain that any amount of
money was contained therein, and did not know up to the time of the trial
that it contained a slip saying "With the compliments or regards of your last
class," together with $51; that he had never seen the slip nor the money.

A stenographer testified that he took down the conversation between the
relator and Commissioner Piper on April 4th, and that the relator then said,
'All I know is that my wife told me an envelope came with some money in it,
and the words 'With the regards of your last class,' " and that he left the

money with his wife, and, when asked if he gave back the money, said: "No, sir; how could I?" and subsequently, "There was nothing improper about it," and that the subsequent conversation was: "It was a present harmlessly bestowed. I made no acknowledgment and rendered no service for this. Q. It has been the practice, * * * and you could have stopped it. * * * This class gave it to you because it was the custom? A. It may have been before. When I came back here I found it. The conditions were there. * * * It was a custom, by whom introduced I do not know. I may have been at fault in not breaking it up. As I told you, the matter never came to me until it was all over."

Deputy Commissioner Piper testified that he called the relator before him and asked him in regard to a collection of $51, and his reply in substance was that he did not know about it and had not personally received it; that it had been received by a member of his family, with a slip saying "Compliments of your last class," and that he had not returned the money, and asked how he could do so; that he said he had not reported the matter to the commissioner, that it was a custom which had grown up during the time he was not in charge of the school, and he did not consider anything wrong about it, and he was suspended that afternoon, and thereafter he was not in a position to prefer charges; that the relator had not admitted that he ever permitted or had knowledge of the taking up of the collection.

The relator having been dismissed, upon the separate findings of the two deputy commissioners that he was guilty of the two charges mentioned, he seeks a review of such determination by writ of certiorari.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

Louis J. Grant, for relator.

Terence Farley, for respondent.

O'BRIEN, J. In reviewing the three trials upon the separate charges made against the relator, the most noticeable feature is that the two deputy commissioners acted alternately as accuser, witness, prosecutor, and judge; and it would seem that from the first the relator was deemed by them to be guilty of a serious offense, and that they were determined upon one charge or another to ultimately secure his dismissal from the force. Thus we have Deputy Commissioner Piper making the first charge that the relator accepted money from the members of the school at the armory, which was tried before Deputy Commissioner Davis, the relator being found "not guilty as charged"; and then Deputy Commissioner Davis charging the relator practically with insubordination, which charge was tried before Deputy Commissioner Piper, who, upon the testimony of Deputy Commissioner Davis, found him guilty; and, finally, charges by Deputy Commissioner Piper, again with relation to the collection taken by members of the School, tried before Deputy Commissioner Davis, Deputy Commissioner Piper testifying against the relator, who, upon one of the specifications, was found guilty. The procedure followed does not commend itself, and it certainly does not tend to promote that spirit of fairness and appearance of impartiality, which should characterize a courtroom, whether the accused be tried upon a criminal offense in a court of law, or for the infraction of the rules and regulations of a large department of the city government.

Passing, however, the attending circumstances of the trial, which compelled the relator to meet upon different charges, the same person acting as accuser, opposing witness, and judge, and without de-

termining to what extent the relator was prejudiced thereby, we fail to find in the record a proper basis upon which to dismiss the relator. With respect to the first charge there was no dispute as to the facts. The relator did not, when called by the commissioner to testify against himself, comply; his counsel interposing and refusing to permit him to do so. That the prosecution obtained whatever benefit could have been derived from calling the relator appears from the fact that he testified in his own behalf and was cross-examined at length. The deputy commissioner, however, complained that the relator, by disobeying the direction that he should testify for the prosecution, was guilty of a breach of discipline. We think a distinction is to be made between the position occupied by a commissioner generally and when he is presiding as a judge at a trial. At such times the accused has been suspended from the force, and the commissioner is acting, not as his superior officer, but as his judge upon the charges preferred. The rules governing judicial tribunals, therefore, and not the rules of the police department, would seemingly apply. In People ex rel. Miller v. Elmendorf, 42 App. Div. 309, 59 N. Y. Supp. 115, it was said:

"As the proceedings are quasi criminal in their nature, and valuable rights of the accused official are at stake, as well as his good name, the same safeguards which are used to protect good name, fame, property, or person in courts of justice should in substance be observed in these proceedings."

We think, therefore, that the failure of the relator to be a witness against himself, when called by the commissioner, his attorney having advised him not to testify, could not properly form the basis of a dismissal from the force, and more especially where, as here, he did thereafter take the stand and was cross-examined.

In regard to the second charge, that, having knowledge that the collection had been or was being made, the relator failed to prefer charges against members who were guilty of violating the rules, it will be noticed that the deputy commissioners, by finding the relator not guilty upon the other specifications, reached the conclusion that the relator did not accept, in the armory of the Sixty-Ninth Regiment, from Hickey, a member of the school, on April 3, 1903, a present of money; that he did not, while in charge of the school, permit the members to take up an unauthorized collection in the armory, on or about April 3, 1903; that he did not have knowledge at that time (April 3d) that the collection had been or was being made; and that he was not neglectful of duty in the matter of the collection. This conclusion, we think, is the one that necessarily follows from the evidence; for the relator, from the time when he was first spoken to by the deputy commissioner on April 4th, the day after the collection is said to have been made, has consistently stated that he had no knowledge of the taking of the collection, and knew nothing of it until after it had occurred, when an envelope, addressed to his wife, was left at his home, and none of the witnesses testify that he had knowledge of the collection. This, taking the view most unfavorable to the relator, leaves less than one day after the collection was made, on April 3d, for the relator to prefer charges against the members of the school who were responsible for leaving the envelope at his house, directed to his wife, with the slip inclosed, saying that it was sent with the com-

pliments of the class, for on April 4th the relator was called before the deputy commissioner at noontime, when he stated that he did not know what to do, and had done nothing, and, within one hour, during which he was engaged at the school, he was suspended from the force, after which time, as the deputy commissioner conceded, he was not in a position to prefer charges.

Furthermore, it was not shown that the relator had any knowledge of what members were responsible for the collection, and unless he had made charges against the whole class, based upon the slip contained in the envelope, it is difficult to see against whom he could have proceeded. Hickey, it is true, testified that he gave to the relator an envelope in the armory; but this testimony was discredited by the commissioners, who found the relator not guilty of receiving money in the armory from Hickey, and there was no support for this testimony—Officer Schneider testifying merely that on April 3d he gave Hickey an envelope containing money in the street opposite the armory. Although it now appears that Schneider and Hickey were instrumental in taking up the collection, we have no credible evidence that the relator knew of their participation. We think, therefore, that the alleged neglect to prefer charges against members of the school, of which the relator was found guilty, should not have been made a ground for his dismissal, because, assuming that the conclusion of the deputy commissioner was right, that the relator did, on April 3d, acquire knowledge of the collection, the fact that he was suspended on April 4th shows that he did not have the time within which he could reasonably have been expected to ascertain those who had violated the rules of the department and to prefer charges against them.

The writ should accordingly be sustained, the proceedings annulled, and the relator reinstated, with $50 costs and disbursements. All concur.