AARON MARTIN, Appellant, v. MAURICE O'KEEFE, as Commissioner of Public Safety of the City of Yonkers, Respondent.

Second Department, March 11, 1921.

**Municipal corporations — review of decision of police executive officers upon trial of members of force — suspension of police officer for receiving bribe — refusal on advice of counsel to appear at trial in uniform — disobedience of order of commissioner of public safety on complaint of superior officer for failure to appear in uniform is not insubordination — reinstatement — extent of duty of public safety commissioner under Second Class Cities Law, section 133.**

The courts are slow to interfere with the decision of police executive officers upon trial of members of the force for violation or neglect of duty. Not only because the determination of disputed questions of fact in such cases is for the commissioner or other officer presiding at the trial under the statute, who has the opportunity to observe the witnesses, but also because the necessary discipline in such a department requires that the decision of the commissioner, who is familiar with the subject-matter and the management of the police force, should have great weight, and in the absence of obvious illegality, prejudice or ulterior motive, should be final. If review is sought, it should be had without delay.

Where a police officer was suspended for receiving a bribe, and at the time set for his trial before the commissioner of public safety he appeared in civilian clothes on advice of his attorney, as he had done on his arraignment, without objection, but was ordered by the commissioner on complaint of a superior officer to appear in uniform, shorn of his badge and other every day indicia of authority, which he refused to do, whereupon the hearing of his case was adjourned, and the superior officer then preferred charges of insubordination, on which the defendant was tried and dismissed from the police force, the order of the commissioner of public safety and the superior officer was unreasonable as matter of law.

In such case the order finding the defendant guilty of insubordination and the other charges growing out of the occurrence, and his dismissal from the police force, should be reversed and the defendant's reinstatement ordered.

Under section 133 of the Second Class Cities Law, authorizing the commissioner of public safety to make and enforce rules, etc., it is doubtful whether the commissioner could order a policeman accused of bribery to appear for trial in uniform where appearance in compliance with the order would in effect be requiring him to furnish evidence against himself.

APPEAL by the plaintiff, Aaron Martin, a member of the police force of the city of Yonkers, pursuant to section 138 of the Second Class Cities Law, from a determination of Maurice O'Keefe, commissioner of public safety of said city, dated June 1, 1920, which finds the appellant guilty of (1) insubordination and disrespect towards his superior officer; (2) neglect and disobedience of orders; (3) breach of discipline, and (4) negligence and dereliction in the performance of his official duties, and delinquencies seriously affecting his general character and fitness for office in the police force and dismisses him from the police force.

The Second Class Cities Law (§ 138, as amd. by Laws of 1910, chap. 266) authorizes such an appeal on questions of law. There is no dispute as to the facts concerning the occurrence which was the basis of the charges resulting in the dismissal. On May 5, 1920, Captain Connolly, appellant's superior officer, preferred charges against him, in which he was accused of accepting a bribe, in that on April 28, 1920, having arrested an automobile driver for exceeding the speed limit, he released the prisoner on receiving ten dollars. The appellant, who had been on the police force for ten years, was suspended from duty as a police officer when the charges were served on him on May fifth; his shield, revolver, keys and summons book were taken from him by the captain who put them in his safe in the police station, and appellant was ordered to appear for trial on the charge of bribery before the commissioner of public safety at the city hall in Yonkers on May 10, 1920. The offense charged against the appellant in addition to violating the police rules, constituted the crime of bribery (Penal Law, § 372), which is a felony. (See Penal Law, §§ 2, 372, 2183.) It is provided in the Second Class Cities Law (§ 137, as amd. by Laws of 1910, chap. 266) that a police officer brought to trial upon charges before the commissioner of public safety " shall have the right to be present at his trial and to be heard in person and by counsel and to give and furnish evidence in his defense." On May 9, 1920, the appellant retained Mr. Cashin as his counsel to answer the charge of receiving a bribe, and with his counsel appeared before the commissioner at the city hall on May tenth and

Second Department, March, 1921.    [Vol. 195.

pleaded not guilty.  At that time the appellant was by advice of his counsel in civilian dress.  No objection was made, his plea was received and the corporation counsel being absent the trial was adjourned, and again adjourned so that it was finally set for May nineteenth at ten o'clock in the morning. On the day last named the appellant with his counsel reached the office of the commissioner a minute or two before ten o'clock, ready for trial.  There was some delay as all of the witnesses for the complainant were not present.  The appellant was not in uniform and his counsel testified that he had advised him not to appear in uniform; he testifies that appellant asked him whether he should appear in uniform and counsel advised him that as he had been suspended from duty he should appear in civilian dress.  It appears that appellant's uniform clothing was at his house, about one-half mile from the city hall where the trial was to take place, and his badge and other police equipment were in the safe at the second precinct station house about two miles from the city hall. About half-past ten o'clock Captain Connolly, in civilian dress, came to the appellant and his counsel who were waiting ready for trial, and the captain testifies, " I accosted the officer here in the office and told him he would have to appear at the trial in uniform; " appellant referred the captain to his counsel, Mr. Cashin, and the captain testifies that counsel answered, " Nothing doing."  The captain testifies that he repeated the order and that appellant " said ' No ' and referred me to his counsel."  The captain then went into the office of the commissioner who was about to try the appellant on the charge of receiving a bribe, and obtained a written order from that official in the following language: " You are hereby ordered to require Patrolman Martin to appear in uniform forthwith for hearing of charges preferred against him. Maurice O'Keefe, Commissioner of Public Safety, Chief of Police."  The captain returned to appellant and read the order to him, but appellant again said " ' No,' and referred me to his counsel again," and counsel also said " no."  Mr. Cashin, the counsel for appellant, substantially corroborates the police captain, but states that he said, " Captain, we can't do that.  This man is on trial and he is suspended."  When the charge of receiving a bribe was finally called for trial at

ten-fifty A. M., appellant and his counsel announced their readiness to proceed, but Captain Connolly said he was not ready because of appellant's refusal to put on his uniform. The trial of the charge was adjourned, Captain Connolly saying, "There is nothing for me to do but prefer charges against him for his refusal to put on his uniform."

Accordingly, on May 21, 1920, Captain Connolly prepared the charges which resulted in appellant's dismissal from the police force after trial before the commissioner on May twenty-sixth, and which are now before this court upon appeal. There are four charges: *First,* insubordination and disrespect toward his superior officer in violation of police rules 33 and C, in that the appellant "when he appeared for trial" refused to put on his police uniform when directed by the captain; *second,* neglect and disobedience of orders; *third,* breach of discipline; *fourth,* negligence and dereliction in the performance of his official duties, and delinquencies seriously affecting his general character and fitness for office on the police force. The specifications on each of these charges refer to the same transaction, the refusal of appellant to put on his uniform. The charges were tried on May 26, 1920, decision was reserved, and on June 1, 1920, the commissioner made the order appealed from, in which he finds the appellant guilty of the four charges of insubordination and dismisses him from the police force.

*John J. Finn* [*Daniel J. Cashin* with him on the brief], for the appellant.

*William A. Walsh, Corporation Counsel,* for the respondent.

KELLY, J.:

The courts are slow to interfere with the decision of police executive officers upon trial of members of the force for violation or neglect of duty. Not only because the determination of disputed questions of fact in such cases is for the commissioner or other officer presiding at the trial under the statute and who has the opportunity to observe and hear the witnesses, but also because the necessary discipline in such a department requires that the decision of the commissioner, who is familiar

with the subject-matter and the management of the police force, should have great weight, and in the absence of obvious illegality, prejudice or ulterior motive, should be final. If review is sought, it should be had without delay. Indeed, in the case at bar the appeal taken on June 3, 1920, should have been brought on for hearing promptly, and there is no apparent excuse for delaying hearing or submission until March, 1921. This is not a certiorari proceeding and the statute authorizing the direct appeal (Second Class Cities Law, § 138, as amd. by Laws of 1910, chap. 266) provides that it shall be upon questions of law. The facts are not in dispute. We proceed, therefore, to examine the evidence to ascertain whether the appellant was justified in his refusal under advice of counsel to put on his uniform on the morning of his trial. It is not suggested that there was any general rule or regulation in force requiring policemen brought to trial before the commissioner to appear in uniform. When the appellant pleaded not guilty to the charge of bribery he was not in uniform and no exception was taken to it. He had been suspended from duty. His shield, revolver, club and report books had been taken from him. His uniform was at his home. He had received no previous intimation that he was to appear in uniform at the trial. Appearing with his counsel ready for trial after two adjournments had at the request of his captain, and after a delay of half an hour, he was directed to put on his uniform, which would have necessitated his leaving the trial room to go to his home, half a mile away, removing his civilian clothing and putting on the uniform of the police force from which he had been suspended. There is no explanation as to how he was to obtain his badge and other equipment, part of the uniform of the police force, if he was to be uniformed as other members of the force. There is no attempt made to cover the object of the order thus given to him, because it is frankly stated in the specifications attached to the charges of insubordination that the reason for the order was that the appellant " might appear before the witnesses at said trial in the same clothing which he wore on the day the alleged bribe was given and received," and it is also stated that " the question of identity of said Martin was a necessary part of the proof of the said charges against him." Aside from the

violation of police rules, the offense with which the appellant was charged was felony, punishable by imprisonment for not more than ten years or by a fine of not more than $5,000 or both. (Penal Law, §§ 2, 372, 2183.) The respondent commissioner of public safety says in the order appealed from: " It is apparent from the testimony taken upon the trial that the defendant, who is alleged to have taken a bribe, had reasons other than the delay necessitated in going to his home to procure his uniform, or the fact of his suspension, or any other reasons stated by him, for not appearing in uniform worn when alleged bribing occurred. The testimony of his counsel clearly indicates that the defendant was advised to wear civilian clothes at all times when appearing for trial upon the charge of bribery and that at no future time would he appear in uniform for a hearing of the bribery charges, the most vital feature of which, would be the matter of identification. * * * It isn't a matter of merely not appearing in uniform, it is a matter of not being able to fairly conduct a hearing on the bribery charges with defendant appearing in civilian clothes." The commissioner is commendably frank in stating the reasons which actuated him in deciding the question of insubordination. But the serious question is whether he had any right to order this suspended policeman appearing before him for trial to go home and don a uniform, the right to use which had been taken from him within the law but without trial or hearing, and to appear in the commissioner's court shorn of his badge and club and other everyday *indicia* of the policeman's authority, it is said for the purpose of identification. If the respondent commissioner accorded to the policeman, as we must assume he did at any rate on the morning of the trial, the presumption of innocence of the serious charge of bribery, and if the identity of the policeman who was charged with taking the bribe was an element in the proof, he must perceive on reflection that to present the policeman marked by absence of badge and other paraphernalia would be hardly a fair way to obtain an identification. Sitting as a trial commissioner, he was performing a most important function not only for the public but for the man accused before him of a most serious crime. This court has said through Mr. Justice O'BRIEN writing for the unanimous Appellate Division in the First

Department: "We think a distinction is to be made between the position occupied by a commissioner generally and when he is presiding as a judge at a trial. At such times the accused has been suspended from the force, and the commissioner is acting not as his superior officer but as his judge upon the charges preferred. The rules governing judicial tribunals, therefore, and not the rules of the police department would seemingly apply. In *People ex rel. Miller* v. *Elmendorf* (42 App. Div. 309) it was said: 'As the proceedings are *quasi* criminal in their nature, and valuable rights of the accused official are at stake, as well as his good name, the same safeguards that are used to protect good name, fame, property or person in courts of justice should in substance be observed in these proceedings.' " (*People ex rel. Schauwecker* v. *Greene,* 96 App. Div. 249, 254.) The Second Class Cities Law· (§ 133) authorizes the commissioner of public safety to " make, adopt and enforce such reasonable rules, orders and regulations, not inconsistent with law, as may be reasonably necessary to effect a prompt and efficient exercise of all the powers conferred and the performance of all duties imposed by law upon him or the department under his jurisdiction." But was the order to the accused policeman on the morning of the trial, to go home and put on a uniform or rather an incomplete uniform for purposes of identification which would mark him out from all other members of the police force, a reasonable rule? I have serious doubts about it. This charge of bribery has never been tried by the respondent police commissioner or any other tribunal. Having dismissed the appellant from the police force on a charge of insubordination, the felony appears to be forgotten. But surely the guilt or innocence of the police officer on the charge of receiving a bribe was of more importance to the community, to the police force and the appellant, than the refusal of the officer to go home and put on his uniform. It cannot be that the only object was to get rid of him. If that were so, the language of Judge Hiscock writing for the Court of Appeals in *Matter of Griffin* v. *Thompson* (202 N. Y. 104, 111) would be directly applicable: "Assuming, as the appellant did, that the order given to him was the first step towards getting rid of him, I do not see how he could safely do less or otherwise than he did. The right of self-

defense against unlawful attack is universally conceded whether exercised in behalf of person or property and it almost savors of unintentional humor, this serious contention that the appellant was guilty of insubordination and insulting conduct because he did not in a spirit of cordial receptivity accept complainant's invitation to assist in preparing for his own official decapitation. It is true that it is now argued that appellant quite misconceived his superior's order and that it did not contemplate his removal. I am inclined to think, however, that subsequent events are the best answer to this argument and indicate that the appellant diagnosed the situation with entire accuracy." When a police officer is charged with a breach of the police rules and regulations which is in fact a most serious felony, it would seem that all purposes of police discipline are accomplished by his prompt suspension from performance of his duties. The felony overshadows the violation of the rule and should be at once referred to the district attorney who has in charge the prosecution of crime. If this accused policeman is convicted, there is no necessity for trial for violation of the rules of the department. There is grave doubt whether in a case such as this, where appellant was accused of crime, he could be compelled to furnish evidence against himself in the manner here proposed. The Legislature in investing the commissioner with power to try the accused expressly provides that he shall have the right to be heard in person and by counsel. (Second Class Cities Law, § 137, as amd. by Laws of 1910, chap. 266.) In the case at bar it is conceded that the refusal of the appellant to leave the place fixed for his trial and to go home and array himself in such part of his uniform as was left to him, was based upon the advice of counsel given in a proper way and not criticised as disrespectful to the captain or the commissioner. If the right to counsel secured to the accused by the statute means anything, the action of the suspended police officer in following that advice cannot be made the basis of a charge of insubordination. I think the order of the police captain and the commissioner was unreasonable as matter of law, and that the order finding the appellant guilty of insubordination and the other charges growing out of the occurrence referred to and dismissing him from the police force should be reversed.

Second Department, March, 1921.          [Vol. 195.

I recommend: Determination of commissioner of public safety of the city of Yonkers, convicting appellant of insubordination and dismissing him from the police force, reversed, and appellant reinstated, with costs to appellant.

MILLS, RICH, BLACKMAR and JAYCOX, JJ., concur.

Determination of commissioner of public safety of the city of Yonkers convicting appellant of insubordination, and dismissing him from the police force, reversed, and appellant reinstated, with costs to appellant.