In the Matter of Edward Scro and Others.

County Court, Kings County, November 10, 1951.

*Sidney Rosenthal* for Edward Scro and others.

*Denis M. Hurley, Corporation Counsel* (*Victor J. Herwitz* of counsel), for Police Commissioner of the City of New York.

*Miles F. McDonald, District Attorney* (*Julius Helfand* and *Aaron E. Koota* of counsel).

LEIBOWITZ, J. This is an application by three police officers, presently defendants in police department disciplinary proceedings, for an order vacating an order of this court heretofore entered, which directed the District Attorney of the County of Kings to transmit to the police commissioner of the City of New York a transcript of the testimony of one Harry Gross adduced before the grand jury, or, in the alternative, for an order to limit the police commissioner's use of said minutes in a manner to be designated by this court.

The parties to this application are the aforesaid police officers, the District Attorney and the police commissioner, the latter being represented by the corporation counsel of the City of New York.

A proper appraisal of the merits of this application requires a brief summary of the antecedent events.

In May, 1951, an indictment was filed in this court charging twenty-one former and present members of the police department with the crime of conspiracy to obstruct justice. It was alleged in said indictment that there was a corrupt agreement among the defendants to provide one Harry Gross, a notorious book-maker, with immunity from police interference in his widespread illegal book-making business. Also named in said indictment, but only as coconspirators, were some fifty other present and former members of the force.

Upon the trial, on September 19th, when called as a witness for the People, Gross refused to testify. Since the very basis for the prosecution was the testimony of Gross, the case col-

lapsed and the District Attorney was constrained to move for dismissal of the indictment, which motion the court granted.

In May, 1951, shortly after the filing of said indictment, the police commissioner had preferred charges and had instituted disciplinary proceedings against the officers named in the indictment both as defendants and as coconspirators.

On September 20, 1951, the District Attorney applied to this court for an order, pursuant to section 952-t of the Code of Criminal Procedure, permitting him to release the grand jury testimony of Gross to the police commissioner for disciplinary action against the officers. The application was granted. The movants now contend that the grand jury minutes should not have been released for such purpose.

In the opinion of the court such contention is without merit.

It is clear that proceedings before a grand jury generally are, and should be, kept a secret. However, where the purpose of the secrecy fails and public interest requires it, the grand jury testimony may be divulged. The power of the court to release such minutes, if not inherent in its jurisdiction, is at least authorized and sanctioned by section 952-t of the Code of Criminal Procedure.

This court is of the firm opinion that the interests of justice demanded that Gross's refusal to testify should not grant absolution to alleged miscreant police officers. If they were guilty of the reprehensible conduct attributed to them, namely, of accepting graft in return for protecting Gross in his illegal business, their continued retention on the police force would have made law enforcement a mockery. Public interest, therefore, required that this testimony be made available to the police commissioner, to be used by him within limits prescribed by law. (*People ex rel. Hirschberg* v. *Board of Supervisors, Orange Co.*, 251 N. Y. 156, 170; *Dworetzky* v. *Monticello Smoked Fish Co.*, 256 App. Div. 772, 774; *Matter of Quinn* [*Guion*], 267 App. Div. 913, affd. 293 N. Y. 787.)

The court now considers the alternative prayer for relief, that it modify the order of September 24th by prohibiting the use of Gross's grand jury testimony upon the trial of the disciplinary proceedings.

The movants base their application on the following grounds:

One: That the disciplinary proceedings are quasi-criminal in nature and that upon a departmental trial the basic rules of evidence that prevail in criminal cases must be substantially followed.

Two: That the testimony of Gross before the Grand Jury, if offered upon the disciplinary proceedings, would be clearly hearsay; and if received as *evidence in chief* in behalf of the prosecution, the movants would be deprived of the opportunity for cross-examination, thereby denying to them their fundamental rights to a fair trial.

In *People ex rel. Miller* v. *Elmendorf* (a police removal case, 42 App. Div. 306, 309) the court said: '' as the proceedings are *quasi* criminal in their nature and valuable rights of the accused official are at stake, as well as his good name, the same safeguards that are used to protect good name, fame, property or person in courts of justice should in substance be observed in these proceedings.''

In *People ex rel. Schauwecker* v. *Greene* (a police removal case, 96 App. Div. 249, 254) the court said: '' We think a distinction is to be made between the position occupied by a commissioner generally and when he is presiding as a judge at a trial. At such times the accused has been suspended from the force, and the commissioner is acting not as his superior officer but as his judge upon the charges preferred. *The rules governing judicial tribunals, therefore, and not the rules of the police department would seemingly apply.*'' (Emphasis supplied.) See, also, *Martin* v. *O'Keefe* (a police removal case, 195 App. Div. 814, 819, 820).

As to whether hearsay testimony is admissible in chief in a police removal case, the movants cite the case of *Matter of Greenebaum* v. *Bingham* (a police removal case, 201 N. Y. 343). At page 347 the Court of Appeals said: '' While the hearing may be more or less informal, the trial must be fair in all substantial respects. Some latitude is allowed as to rules of evidence, methods of examination and the like, but no essential element of a fair trial can be dispensed with unless waived, and no vital safeguard violated without rendering the judgment of conviction subject to reversal upon review. *A fair trial, according to existing practice, requires that the accused shall be confronted by the witnesses against him and given an opportunity to hear their statements under oath, and to cross-examine them to a reasonable extent. Hearsay evidence cannot be received:* evidence cannot be taken in the absence of the accused and the trier of the fact can find the fact only on the evidence and not on his own knowledge.'' (Emphasis supplied.)

It is significant that the police department itself recognizes this fundamental right to confrontation and cross-examination. Its Manual of Procedure relative to disciplinary proceedings

provides: "Before testifying, the witness shall be sworn by the Trial Commissioner; the Department shall conduct a direct examination; at the conclusion of direct examination the witness shall be at the disposition of the accused *for cross-examination.*" (Emphasis supplied.)

In *People ex rel. O'Neill* v. *Bingham* (a police removal case, 132 App. Div. 667, 671) it is said: "The question is, whether the removal of the relator had been had by due process of law. He was entitled to be represented by counsel and to be given a reasonable opportunity of having counsel *cross-examine the witnesses* produced against him." (Emphasis supplied.) (*Matter of Roge* v. *Valentine* [a police removal case], 280 N. Y. 268, 276, 279; *People ex rel. Mayor of City of N. Y.* v. *Nichols* [a police removal case], 79 N. Y. 582; *Matter of Connolly* v. *Scudder*, 222 App. Div. 591; *People ex rel. Packwood* v. *Riley*, 203 App. Div. 398; *People ex rel. Schauwecker* v. *Greene*, 96 App. Div. 249, *supra.*)

It is self evident that no one can cross-examine the mute pages of a transcript of grand jury testimony.

It may be said parenthetically that should Gross testify at the disciplinary hearings, his grand jury testimony may be properly used for the purpose of cross-examination. (Code Crim. Pro., § 8-a; Civ. Prac. Act., § 343-a.) It may also be legitimately employed to refresh his recollection or to attack his credibility. (*People* v. *Walsh*, 262 N. Y. 140, 149.)

For the reasons aforesaid, the movants insist that it would violate their rights to a fair trial if Gross's grand jury testimony were received as evidence in chief. They contend that *Matter of Reynolds* v. *Triborough Bridge & Tunnel Authority* (276 App. Div. 388) is not pertinent authority to the contrary.

Another and very serious problem confronting this court is whether the names of civilians and police officers named by Gross in his grand jury testimony, who are not defendants in the disciplinary proceedings, may be disclosed at such hearing. Stated differently, should this court permit the names of such persons to be read in evidence and thus publicized? The District Attorney vigorously opposes such contemplated procedure. He asserts that to allow this may do grievous injury to those individuals who will not even be afforded an opportunity to refute the charges, and this would be in violation of the fundamental concepts of justice. This court is in full accord with these sentiments. The traditions of American justice look upon the supremacy of our courts as a necessary safeguard of civil rights and principles.

In the foregoing observation, this court has reviewed rather extensively the principles of law cited by the movants as applicable to the introduction of hearsay testimony at police disciplinary hearings. The order permitting the transmission of the grand jury minutes to the police commissioner was granted upon an ex parte application of the District Attorney. It was within the court's discretion to deny the District Attorney's application. Therefore, there is inherent in the court, the power to modify or amplify its order, and to restrict the use of the minutes or portions thereof.

The ultimate question now is: Should the court exercise such power at this time, under the circumstances herein described? Should it make an order restricting the use of the minutes as requested by the movants? In other words, should this court, by an amended order, plot a legal blueprint detailing the manner in which these grand jury minutes may be employed at the disciplinary proceedings?

In effect, what the movants request is that this court indulge in the assumption that an erroneous ruling will be made, and request this court, in anticipation thereof, to issue what in effect would be equivalent to an injunction to restrain such ruling. Under the circumstances in this case it would be an improvident exercise of discretion so to do.

The proper forum for the determination of the movant's contentions is the disciplinary proceedings. Presiding thereover is an eminent lawyer and distinguished former member of the judiciary, especially selected by the police commissioner to preside over the disciplinary proceedings. The responsibility of ruling upon the admissibility of evidence resides with him. It is expected that he will be mindful of the statutes, and the pertinent rules of law enunciated by the appellate courts of this State.

This court cannot assume that, in the event the grand jury testimony is offered in evidence at the disciplinary proceedings, the trial commissioner will rule erroneously and contrary to the letter and spirit of the well-settled principles of law set forth in the decisions hereinbefore discussed. (*People ex rel. Mulkins* v. *Jimerson*, 229 N. Y. 438; *People ex rel. Saranac Land & Timber Co.* v. *Supreme Court*, 220 N. Y. 487; *People ex rel. Ballin* v. *Smith*, 184 N. Y. 96; *Matter of Markham* v. *Justice's Court*, 279 App. Div. 703.)

Should the trial commissioner commit error in the admission of this hearsay testimony and find an accused guilty, such determination could be adequately reviewed by the proper appel-

late court. (Civ. Prac. Act, art. 78; *People ex rel. Saranac Land & Timber Co.* v. *Supreme Court, supra,* p. 493.)

This court must also assume that the trial commissioner will be mindful of the futility of permitting patently incompetent matter to be received in evidence, thus inviting an invalidation by an appellate court of a finding of guilt. The reception of such incompetent evidence may insure the ultimate victory of venal police officers over those who are seeking to cleanse a great police department of members who are unworthy of the trust reposed in them.

For the reasons aforesaid the motion should be denied. Submit order.