Chief Judge Fuld.
We are called upon to decide whether the courts below were warranted in authorizing the Public Service Commission to inspect the grand jury minutes in a proceeding long concluded.
In 1966, the District Attorney of New York County embarked on an investigation of alleged rigged bidding among a number of construction companies in connection with contracts let by the Consolidated Edison Company of New York, Inc. and other utilities. Following that investigation, which extended over a two-year period, the District Attorney presented his evidence to a grand jury. As a result of that inquiry—at which numerous witnesses gave testimony filling more than 1,000 pages — the grand jury returned an indictment against the defendants-appellants, several construction companies and certain of their officers, charging them with comspiracy to rig bids and engage' in collusive bidding (former Penal Law, § 580; Penal Law, § 105.05; General Business Law, §§ 340, 341). Each of the defendants pleaded guilty and thereafter paid the fines which had been imposed.
Some time after revelation of the hid rigging conspiracy, the Public Service Commission—which is charged with the “ general supervision ” of public utilities in this State, including the fixation of “ just and reasonable rates ” (Public Service Law, § 66) —instituted an administrative proceeding relating to costs incurred by Consolidated Edison under contracts — having a gross value in excess of $300,000,000 — with the contractors involved in the rigged bids.[1] The Commission seeks to ascertain *234 whether the accounting records of the utility reflect payments which should not properly be charged to the rate payers. If it be determined that utility accounts are overstated because of unwarranted payments and that the utility was in some measure in complicity with the contractors, the amounts which consumers would have to pay for gas and electric service would be reduced.
To assist it in its inquiry, the Commission made a motion, on notice only to the District Attorney, for an order permitting it to inspect the grand jury minutes reflecting the evidence in support of the indictment against the defendant contractors. The District Attorney interposed no objection, and the court at Special Term granted the motion authorizing the disclosure. A week later, the contractors moved for a vacatur of the inspection order. It was denied because, as the court put it, ‘ ‘ the public’s interest and the interest of justice will be best served in granting the inspection.”[2] Upon appeal from both orders, a divided Appellate Division affirmed, and the contractors’ appeal is before us as of right.
We start with the proposition that secrecy of grand jury minutes is not absolute. Under section 952-t of the Code of Criminal Procedure, a copy of the minutes may be furnished to “ any * * * person * * * upon the written order of the court”.[3] Firmly settled is the rule that determination of the question whether disclosure should be permitted is addressed to, and rests in, the trial judge’s discretion. (See, e.g., Matter of Quinn [Guion], 293 N. Y. 787, affg. 267. App. Div. 913; Matter of Temporary State Comm. of Investigation, 47 Misc 2d 11, 14; People v. Behan, 37 Misc 2d 911, 918; Matter of City of New Rochelle, 35 Misc 2d 254, 256; Matter of Third, Dec., 1959 Grand Jury, 20 Misc 2d 475, 476.) In exercising this discretion, the court must balance the competing interests involved, the public interest in disclosure against that in secrecy. It is *235 our view that Special Term and the Appellate Division properly found that the public interest would best be served by allowing inspection by the Commission. As to the interest in disclosure, we need but note that charges to consumers arising from the decade-long conspiracy, involving millions of dollars, may depend upon the agency’s ascertainment of the degree of Consolidated Edison’s — and Brooklyn Union’s — involvement in the criminal conspiracy. Moreover, only by obtaining a complete record will the Commission be able to take steps to prevent similar victimization of utilities and their customers in the future.
Ranged against these considerations are the reasons for maintaining the secrecy or confidentiality of grand jury minutes. Those most frequently mentioned by courts and commentators are these: (1) prevention of flight by a defendant who is about to be indicted; (2) protection of the grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the grand, jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely. (See, e.g., People ex rel. Hirschberg v. Board of Supervisors, 251 N. Y. 156, 165; Matter of Temporary State Comm. of Investigation, 47 Misc 2d 11, 14, supra; Matter of Attorney-General of U. S., 160 Misc. 533, 534; People v. Ewald, 144 Misc. 657, 600; United States v. Amazon Ind. Chem. Corp., 55 F. 2d 254, 261; see, also, 8 Wigmore, Evidence [McNaughton Rev., 1961], §§ 2360-2362.)
Applying these criteria to the case before us, it is evident that the courts below were justified in exercising their discretion as they did. At this time—more than two years after the conclusion of the grand jury proceedings, the conviction of the appellants by guilty pleas and the payment of fines — there is no danger of any escape of persons who may be indicted, no interference with the grand jury’s freedom to deliberate, no danger of subornation of perjury and no need to protect any innocent accused person. Indeed, as the Appellate Division observed (35 A D 2d 31), “ [i]mplicit in the absence of objec *236 tion on the part of the District Attorney is the lack of detriment in respect of any prospective criminal proceeding. ’ ’
Concerning the last reason listed above —• assurance to prospective witnesses that their testimony will be kept secret to encourage their giving of testimony—we believe it may not be said that the disclosure here ordered will have a chilling effect on the ability of future grand juries to obtain witnesses. The Commission, far from being an “ outsider,” is a governmental investigatory body, with specific authority over the subject matter into which the grand jury was inquiring. Having in mind the nature of the conspiracy under investigation by the grand jury, witnesses before it could reasonably have anticipated that some investigating body, even though it might not be the Public Service Commission, would be set up to consider the impact of such criminal activity upon the public utility, as well as its consumers, and procure a copy of the minutes to assist it in such investigation. We find no merit in the appellants’ contention that permission to inspect grand jury minutes has been granted only to those officials or agencies concerned with the administration or enforcement of the criminal law. (See, e.g., Matter of Quinn [Guion], 293 N. Y. 787, affg. 267 App. Div. 913, supra [town residents]; Matter of Temporary State Comm. of Investigation, 47 Misc 2d 11, supra [State Investigation Commission]; People v. Behan, 37 Misc 2d 911, supra [Special State Investigation Commissioner]; Matter of Scro, 200 Misc. 688 [Police Commissioner, for quasi-criminal inquiry]; Matter of Crain, 139 Misc. 799 [State investigation of food and fish markets]; Matter of People ex rel. Sawpit Gymnasium, 60 N. Y. S. 2d 593 [village officials].)[4] In point of fact, this court, in Matter of Quinn (Guion) (293 N. Y. 787, supra), held that it was permissible to grant inspection of the grand jury minutes to a number of residents of a town Avho *237 were attempting to remove their town receiver of taxes on the ground of negligence where the grand jury had previously conducted an investigation into his conduct and activities.[5] Assuredly, the possibility of disclosure to a body as unofficial as a group of town residents would be far more inhibiting to prospective witnesses than limited disclosure to an official investigative agency of the State.
Quite obviously, our affirmance will not sanction any general disclosure or widespread publication of the minutes. Authorization to inspect was granted solely to enable the Commission’s staff to utilize the minutes to assist it in its investigation and preparation for the public hearings which it will hold. It may well be that, if a witness who had appeared before the grand jury testifies at the Commission hearing, one or another of the parties may desire to use his grand jury testimony for the limited purpose of impeachment in the context of the hearing. This does not, however, militate against the disclosure to the Commission directed by the courts below, for such limited “publication” — use of a witness’ grand jury testimony for impeachment purposes—is commonplace and perfectly proper. (See People v. Jaglom, 17 N Y 2d 162, 164; People v. Pizarro, 15 N Y 2d 803, 804; People v. Agron, 10 N Y 2d 130, 136; People v. Purvis, 41 Misc 2d 787, 788.) As Wigmore has written — and as our courts have indicated (see Kruger v. County of Nassau, 53 Misc 2d 166, 167; People v. Purvis, 41 Misc 2d 787, 788, supra; Matter of Scro, 200 Misc. 688, 692, supra; see, also, Matter of Fenimore Circle Corp. v. State Liq. Auth., 27 N Y 2d 716; People v. Rosario, 9 N Y 2d 286, cert. den. 368 U. S. 866) — “ [i]t is now universally conceded that a witness may be impeached in any subsequent trial, civil or criminal, by self-contradictory testimony * * * given by him before the grand jury.” (8 Wigmore, Evidence [McNaughton Rev., 1961], § 2363, p. 737; see, also, McCormick, Evidence [1954], § 150, p. 313.)
*238 Any such use of the minutes would, of course, be subject to whatever lawful objection a party to the proceeding or a witness chooses to voice. (See, e.g., People ex rel. Hirschberg v. Board of Supervisors, 251 N. Y. 156, 172, supra; Matter of Scro, 200 Misc. 688, 692-694, supra.) Consequently, if the testimony sought to be used should be kept secret or confidential or, if its disclosure would be inimical to public policy, the court — on application of a party, a witness or any appropriate public official—may be asked to intervene to prevent disclosure of the testimony in question. (Cf. People v. Remaley, 26 N Y 2d 427, 429; People v. Kass, 25 N Y 2d 123, 127; People v. Malinsky, 15 N Y 2d 86, 90; People v. Rosario, 9 N Y 2d 286, 289-290, supra.)
The circumstance that the Commission might itself be able to gather the essential data and facts contained in the grand jury minutes is beside the point. This was a matter to be weighed by the courts below in deciding how to exercise their discretion. They were not required, as a matter of law, to compel the Commission to conduct its own investigation at the expenditure of considerable time and money and make a record of its own rather than avail itself of the existing record resulting from the grand jury inquiry.
In short, as we have already noted, the grant of the Commission’s motion may not be said to have been an abuse of discretion. Special Term and the Appellate Division, undoubtedly having in mind the character of the party seeking inspection, the nature of the inquiry involved and the results of the grand jury investigation, were justified in authorizing disclosure of the grand jury minutes. Since, then, there was ample basis for the conclusion that the inspection will serve the public interest and that the reasons for the rule of secrecy no longer exist, it follows that the order appealed from should be affirmed.

. The Commission also commenced a similar proceeding relating to costs incurred by the Brooklyn Union Gas Company pursuant to contracts with the bid-rigging contractors.

. Special Term’s order prohibited any disclosure of the minutes while appeals in the present action were pending.

. The statute (Code Crim. Pro., § 952-t), which is addressed to the stenographer who transcribes the minutes, provides, in somewhat greater detail, that he must “furnish to the district attorney of [the] county a full copy of all such testimony as such district attorney shall require, but he shall not permit any other person to take a copy of the same, nor of any portion thereof, * * * except upon the written order of the court duly made after hearing the said district attorney ”.

. A number of Federal decisions, cited by the appellant contractors, do narrowly limit the scope of disclosure but they are controlled by a specific Federal rule — rule 6 (subd. [e]) of the Federal Rules of Criminal Procedure — which explicitly provides that disclosure may only be made to “ attorneys for the government for use in the performance of their duties ” or to others on court order “ preliminarily to or in connection with a judicial proceeding ”. The law in this State is much broader, as is evidenced by the eases to which we have called attention above, in which disclosure was sanctioned even where there was no “ connection [whatsoever] with a judicial proceeding

. The court’s decision in Quinn is particularly illuminating. In that case, we affirmed the Appellate Division’s reversal of the trial judge’s refusal to allow the requested inspection by the town residents (293 N. Y. 787, supra). The Appellate Division, in reversing on the law and facts and granting the motion, explicitly held that “ under the circumstances in this case the motion [for inspection] should have been granted as a matter of discretion ” (267 App. Div. 913).