OPINION OF THE COURT
Lyman H. Smith, J.
Subpoenaed (pretrial) to appear and testify on behalf of the People in the trial of People v Sheeran (Indictment No. SI/ 1977),[1] petitioner (Kinsella) makes application, prior to his scheduled trial appearance, for an order directing the Onondaga County Special Prosecutor to furnish him with (1) a full and complete transcript of his previous Grand Jury testimony,[2] including any and all legal instructions given to the *917 Grand Jury (before which he appeared) together with the results of the Grand Jury’s vote, (2) any statements previously given by petitioner and currently in the possession of the Special Prosecutor, (3) any tapes or transcripts of petitioner’s conversations obtained by electronic or telephonic surveillance, and (4) any of petitioner’s statements previously obtained by subpoena duces tecum directed to him or to others.
The basis for petitioner’s instant application is twofold: First, he asserts that any witness appearing and giving testimony before a Grand Jury has a proprietary right to a transcribed copy of such testimony. Secondly, he urges that it is "necessary” for him to review his Grand Jury testimony before appearing at the Sheeran trial.
At the conclusion of oral arguments presented to this court on August 1, 1978, petitioner’s initial claim of a proprietary right in and to a copy of his Grand Jury testimony was rejected. Noting that this contention was, indeed, unique and unusual, without statutorial or decisional authority to support it, this court referred in its bench decision to the long-standing and time honored tradition of secrecy and confidentiality that cloaks all Grand Jury proceedings (CPL 190.25; Judiciary Law, § 325). Further, attention was drawn to the several cogent reasons for the continuation of this tradition which were enunciated by the Court of Appeals in People v Di Napoli (27 NY2d 229). Leave was granted to petitioner, however, to file further sworn affidavits in support of his second contention, i.e., that it is "necessary” for him to review his Grand Jury testimony prior to appearing in the Sheeran trial.
Petitioner is currently a Senior Assistant District Attorney in Onondaga County. His testimony before the January, 1977 Extraordinary Special Grand Jury of Onondaga County was part of the ongoing investigation (mandated by Executive Order No. 42 [9 NYCRR 3.42, Nov. 24, 1976]) into purported illegal solicitations of political contributions in Onondaga County. His Grand Jury testimony apparently relates to the purported existence of a conspiracy, among several high-ranking Onondaga County public officials, to benefit the Onondaga County Republican Committee through alleged illegal solicitation of political contributions from county employees, includ *918 ing the District Attorney’s office.[3]
The Special Prosecutor suggests that petitioner’s testimony in the Sheeran trial will be offered as a portion of the proof of the alleged conspiracy. Counts 1 and 2 of the Sheeran indictment (Sl/1977) charge just such a conspiracy. Additionally, it is undisputed that petitioner’s prior Grand Jury testimony relates to other public officials who stand accused under indictments charging an identical and ongoing conspiracy as well as a broad spectrum of interrelated overt acts, purportedly committed in furtherance of the objectives of such conspiracy. Thus, it follows that petitioner will be subpoenaed as a witness upon the trial of all other indictments charging such conspiracy.
Although the Special Prosecutor has agreed to review the prospective trial testimony of the petitioner, prior to his scheduled appearance in the present trial of the defendant Sheeran, nevertheless, the Special Prosecutor resists any order directing him to furnish petitioner a copy of petitioner’s prior testimony or permitting petitioner a wholesale review, at this juncture, of all transcripts of petitioner’s total Grand Jury testimony, especially as to those parts thereof pertaining to other indictments and .defendants that have not yet gone to trial.[4] In this regard, the Special Prosecutor urges that petitioner has failed to reveal "compelling reasons” which would presently warrant disclosure of petitioner’s total Grand Jury testimony.
In passing, it should be noted that petitioner has refused, "at this time”, the Special Prosecutor’s invitation to review the petitioner’s prospective trial testimony.
Upon this court’s invitation, petitioner has now submitted (in writing) variant reasons in support of his contention that it is "necessary” for him to review his Grand Jury *919 testimony before his appearance in the Sheeran trial. None carry compelling force.
For example, petitioner contends that his personal review of his Grand Jury testimony, prior to his trial appearance, would expedite the Sheeran trial. No explanation is offered for this contention. If, perchance, petitioner is concerned that a lapse of memory, as to those events to which he will be asked to testify, would necessitate delays in the trial, in order to permit refreshment of his recollection by referral to his Grand Jury testimony, such concern will not suffice to trigger the relief requested. Such concern is speculative. The spectre of trial delay, to permit a witness to refresh his recollection, is always present (prior to a witness’ appearance) and, as a practical matter, is seldom time consuming.
Additionally, petitioner speculates that the Special Prosecutor is attempting to "embarrass him” at the Sheeran trial. Again, no foundation for this conclusion is set forth. Nor is any explanation offered as to the method or circumstances by which he might be embarrassed. Again, his opportunity to refresh his recollection by reading portions of his Grand Jury testimony, at trial, should absolve his fears in this regard.
Petitioner avers that the Special Prosecutor is setting a "perjury trap” for him, alleging, upon information and belief, that the transcript of his Grand Jury testimony is not accurate, that the Special Prosecutor may have edited his Grand Jury testimony and that he is a target of the Special Prosecutor’s investigation by reason of his political affiliation and his employment as an Assistant District Attorney.[5] As noted, these allegations are made "upon information and belief’. Neither the sources of petitioner’s information, nor the grounds for his belief are revealed in petitioner’s pleadings. Nor are any additional foundational facts established for these assertions. Accordingly, such allegations are insufficient to support the relief requested. (See Buell v Van Camp, 119 NY 160; Ingram v Robbins, 33 NY 409; Matter of Huff, 136 App Div 297.)
An expression of fear of a "perjury trap” is unconvincing for several additional reasons.
So long as petitoner’s concept of a "perjury trap” remains undefined, this court conceives that it has no obligation to *920 protect the prospective witness from a "perjury trap”, whatever that may be. At best, petitioner’s contention presupposes a prior faulty memory. At worst, it alludes to either perjurious prior Grand Jury testimony or to prospective perjurious testimony in the instant trial. Refreshment of recollection (CPL 60.35) may legitimately cure a faulty memory. But, from prior perjury this court cannot save the witness. From prospective perjury this court will not save the witness. It must be assumed that petitioner, like every other witness subpoenaed to testify at the Sheeran trial, will tell the truth. Until and unless the feared "perjury trap” rests on something more than speculation, the witness’ conscience must be his only accuser.
Finally, it must be emphasized that, in the event petitioner were to be charged with perjury or criminal contempt, arising either from his Grand Jury testimony or from his prospective trial testimony, he would, in such event, be afforded the full panoply of rights to all accused of criminal conduct. This would, of course, include the right to receive a copy of his Grand Jury testimony (CPL 240.20, subd 1, par [a]). At such time, errors in transcription of testimony, editing of testimony, improper instructions on the law, resulting in confusion, and unsworn stenographers[6] could all be raised in petitioner’s defense. Where it becomes manifest that the primary purpose for the questioning of a witness was the solicitation of perjurious testimony, such person, when later charged with perjury or criminal contempt, is not without relief. (See People v Tyler, 62 AD2d 136.) At this point in time, petitioner’s speculative allegations are not only premature, but also insufficient to invade the secrecy of the Grand Jury proceedings, presumed to be proper (People v Howell, 3 NY2d 672; People v King, 48 AD2d 457).
 CPL 190.25 (subd 4) mirrors the ancient principle that Grand Jury proceedings are to be maintained secret. Such principle is not absolute, however, and exceptions thereto exist, subject to the sole discretion of the trial court. (See CPL 190.25, subd 4; Judiciary Law, § 325.) In exercising such discretion, care must be taken to properly balance the public interest to be served by disclosure of Grand Jury proceedings *921 against the well-recognized public interest in preserving and maintaining Grand Jury secrecy. (See People v Di Napoli, 27 NY2d 229, supra; Matter of Zinna [Rensselaer County Grand Jury], 63 AD2d 800; Matter of City of Buffalo, 57 AD2d 47; Matter of Scotti, 53 AD2d 282.) Exceptions to the basic principle (of secrecy) have been confined to situations requiring the disclosure of Grand Jury proceedings to aid and abet effective public interest investigations (People v Di Napoli, supra) or law enforcement activities (Matter of Carey, 92 Misc 2d 316; Albert v Zahner’s Sales Co., 81 Misc 2d 103). Recent interest in this latter rationale for disclosure has resulted in an expansion of those persons authorized by statute to examine Grand Jury evidence. (See L 1977, ch 451, § 3, amdg CPL 190.25, subd 4.)
Viewed against this background, petitioner Kinsella’s reasons for the necessity of examining his Grand Jury testimony fall short of the mark required to permit an invasion of Grand Jury secrecy. No public interest will be served by permitting such examination. The reasons relied upon are highly personal, although enshrouded in undefined allusions to rights of fundamental fairness and constitutional due process. Of course, such fundamental rights will always be available to others associated, directly or indirectly, with petitioner’s Grand Jury testimony, i.e., to the People, to the accused (Sheeran) and to all other defendants heretofore indicted and awaiting trial as a result, perhaps, of such testimony.
At the same time, the People are commendably concerned that their witnesses in the present trial not appear coached or otherwise prompted, which result could predictably follow a witness’ preappearance study and examination of his prior testimony. While it may be customary for some prosecutors to permit (indeed, to encourage) prosepetive prosecution witnesses to review their Grand Jury testimony prior to a trial appearance, such practice lies wholly within the prosecutor’s discretionary mode of preparing for trial (CPL 190.25, subd 4). Disclosure is not a right to be claimed by a prospective witness. "No pledge of privacy nor oath of secrecy can avail against demand for the truth in a court of justice.” (8 Wigmore, Evidence, § 2286.)
Here, the Special Prosecutor is also concerned that premature disclosure may inadvertently permit the petitioner’s Grand Jury testimony to fall into the hands of third parties, with the reasonably foreseeable result that future witnesses, *922 scheduled to appear before ongoing Grand Jury investigations or upon the trial of those other indicted and untried defendants, will be intimidated. The chilling effect of any premature disclosure upon past, present or future witnesses seems clear. Given the current level of tenacity with which the news media has followed and reported the ongoing Grand Jury investigations in this county (pursuant to Executive Order No. 42 [9 NYCRR 3.42]), such concern is not without foundation.
Petitioner avers that, at least in our State, there has been no historical restriction imposed upon Grand Jury witnesses to maintain the secrecy of Grand Jury proceedings (People v Minet, 296 NY 315). Indeed, it should be noted, the Legislature has recently sanctioned the revelation, by a Grand Jury witness, of such witness’ Grand Jury testimony. (See L 1977, ch 451, § 4, amdg Penal Law, § 215.70.) But, it must also be noted, that statute does not permit disclosure of the Grand Jury transcripts of the witness’ testimony. In offering to waive the protection of Grand Jury secrecy, petitioner misses the point.[7] It is to prospective witnesses in future Grand Juries, to the witnesses subpoenaed upon the trial of the defendant Richard Sheeran, and to the witnesses to be called to testify in the future trials of other untried defendants that the continued protection of secrecy must extend. Premature disclosure of petitioner’s Grand Jury testimony leads to the inescapable and inevitable conclusion that Grand Jury proceedings are not, in fact, secret. Again, the resultant chilling effect on other and future witnesses seems clear, and, arguably, could lead to undermining all future Grand Jury investigations.
Finally, the Special Prosecutor’s avowed willingness to review with petitioner his prospective trial testimony renders hollow petitioner’s concern for the violation of his due process rights. Lacking here is the excessive and repeated questioning of petitioner at the Grand Jury level, found in Bursey v United States (466 F2d 1059), cited by petitioner. The concern of the Bursey court to protect laymen who " 'cannot be expected to know how to protect their rights when dealing with practical and carefully counselled adversaries’ ” (Bursey v United States, supra, p 1080, n 11) is not shared by this court, *923 especially, when adjudged in the light of petitioner’s experience as a member of the Onondaga County District Attorney’s office. Nor is petitioner cast in the same position as the defendant in United States v Rose (215 F2d 617), who, after being charged with rendering perjurious testimony before a Grand Jury, was denied inspection of his own Grand Jury testimony in preparing for trial.[8] Petitioner here is not charged with any crime.
Petitioner offers only speculative fears, under the guise of "reasons”, for disclosure of his Grand Jury testimony. Such fears are not compelling. The public’s interest in fair trials, fair to the People, fair to the defendant at bar, and fair to untried defendants outweighs the narrow, speculative and conclusory concerns contained in petitioner’s present application.
Disclosure of other items now sought by petitioner is also denied. No constitutional, statutorial or decisional authority is offered in support of such a request. Indeed, this court conceives there is none. Specifically, petitioner’s application for any tapes or transcripts of conversations obtained by electronic or telephonic surveillance is premature, inasmuch as the Special Prosecutor has yet to serve any notice (CPL 700.50, subd 3) that an eavesdropping warrant has been terminated, if one has ever been issued. Only upon such notice, may petitioner apply for inspection of the warrant, the underlying application therefor and the communications, if any, intercepted thereunder. The remaining requested items are the property of the Special Prosecutor and may be made available to petitioner only in the event he is ever named a defendant in any criminal proceeding. (See CPL art 240.)
Petitioner’s application is, in all respects, denied.

. Trial of Indictment No. Sl/1977 (People v Sheeran) commenced July 10, 1978.

. Petitioner appeared and testified before the January, 1977 Extraordinary Special Grand Jury of Onondaga County on April 18 and 20, 1978. As a result, he received statutorial transactional immunity (CPL 190.40). He is not presently charged with having committed any crime.

. The Extraordinary Special Grand Jury has heretofore filed several indictments charging various public officials of Onondaga County with alleged violations of the Penal Law, Civil Service Law and Election Law, purportedly arising from this interrelated conspiracy to illicitly raise political funds. One of those so indicted is the former Onondaga County District Attorney, Jon K. Holcombe, under whom petitioner has served. It is alleged in the Holcombe indictment that petitioner was one of those county employees solicited for political contributions.

. The Special Prosecutor’s Office concedes that in the event it becomes necessary, in the interests of justice and in furtherance of its lawful duties (such as to adequately prepare a witness for his trial appearance), it would be authorized to disclose all or part of a Grand Jury witness’ testimony to such witness, without court order, pursuant to CPL 190.25 (subd 4).

. These charges are specifically denied in the sworn affidavit of the Special Prosecutor, dated August 10,1978.

. Petitioner’s claim that one of the stenographers who transcribed his Grand jury testimony was unsworn, in violation of section 329 of the Judiciary Law, is rendered erroneous by Exhibit C-2 contained in the sworn affidavit of the Special Prosecutor, dated August 10, 1978.

. Petitioner has stated, both orally and in writing, that he has no intention of divulging his Grand Jury testimony to third parties, and this court has no reason to think that he will. Rather, it is the concern of this court that such testimony could find its way into the hands of third parties despite petitioner’s efforts to prevent this from happening.

. Similarly, the remaining Federal cases cited by petitioner either, in the majority, support the instant holding, or properly pertain to defendants seeking a copy of their Grand Jury minutes, rather than to a prior witness not charged with any crime. (Dennis v United States, 384 US 855; United States v Clavey, 565 F2d 111; Bast v United States, 542 F2d 893; United States v Dinsio, 468 F2d 1392.)