OPINION OF THE COURT
Michael J. Dontzin, J.
This motion concerns itself with a problem, frequently confronting courts: whether to maintain the secrecy or to order the disclosure of Grand Jury minutes in the public’s interest. The fundamental substantive issue involved is whether a party seeking disclosure has demonstrated a compelling and particularized need for disclosure that is persuasive enough to overcome the strong presumption in favor of secrecy.
Charles E. Smith (Smith) joined by George Schlossman (Schlossman), Irving Mandell (Mandell), Mark Kressner (Kressner), all lawyers (movants) have moved to vacate an order of disclosure of this court dated August 4, 1982 (the *288 order). The order, limited to the extent indicated below, authorized the attorneys for FOJP Service Corporation (FOJP) to inspect and copy the minutes of a Grand Jury that investigated an alleged conspiracy among an undetermined number of attorneys, including movants, to illegally obtain confidential and privileged information and materials with respect to potential or pending malpractice claims against FOJP’s affiliated hospitals and agencies.
Smith was the only one of the movants to testify before the Grand Jury under a waiver of immunity, and consented to the use of his testimony in any trial or proceeding.
FOJP, a nonprofit institution, on behalf of New York Federation of Jewish philanthropic hospitals and agencies,[1] investigates potential medical malpractice and personal injury incidents, co-ordinates insurance coverage and supervises the defense of personal injury and medical malpractice claims and lawsuits brought against their hospitals and agencies. In the course of rendering its services, FOJP receives and evaluates highly confidential reports from their affiliated hospitals and agencies, and from their outside trial counsel.
In 1979, FOJP employed Smith as the director of legal claims services and in-house counsel. As such, he was required to oversee the investigation of incidents at affiliated hospitals and agencies which might give rise to medical malpractice and personal injury claims and lawsuits and to supervise the litigation and/or settlement of all such claims or lawsuits. He had access to all the confidential information, as well as trial strategies relative to all such claims and lawsuits. In that capacity, naturally, he was bound to preserve the confidentiality of this information.
As appears from all the criminal proceedings and the papers before this court, Smith stole this confidential infor *289 mation almost from the outset of his employment by FOJP. He sold the information to various personal injury and malpractice lawyers whose numbers are unknown (including Schlossman, Mandell and Kressner). Apparently, the information was used to solicit claimants in medical malpractice and personal injury lawsuits, or used in pending lawsuits. This scheme of illicit activities was uncovered when a patient, who was approached by a lawyer, reported the solicitation.
All of the movants, and another lawyer not a party here, were indicted, have entered guilty pleas to various charges, some of them before this court, and have been sentenced.
On July 28, 1982, after all of the criminal proceedings against all the movants except Mandell had been completed, FOJP, on notice to the District Attorney, moved pursuant to CPL 190.25 (subd 4) for an order authorizing their attorneys to inspect and copy the minutes of the Grand Jury proceedings, including all the materials and tape recorded conversations presented to the Grand Jury investigating the conspiracy. At the hearing held on the FOJP’s application, the New York County District Attorney consented to the requested disclosure. FOJP in its application and in oral argument before this court demonstrated its compelling need for the minutes in order to bring civil proceedings against movants and others involved in the conspiracy, as well as to defend FOJP’s affiliates in lawsuits pending in New York courts, which allegedly were brought on the basis of the fraudulently obtained information, or enhanced by such information.
An order was entered on August 4, 1982 granting the application, limited as to the movants other than Mandell, since at the time his case was still pending. Subsequently, he entered a guilty plea and was sentenced.
In October, 1982, FOJP and its affiliates filed a civil suit in the United States District Court, Southern District of New York, against the movants and other conspirators, including unknown conspirators, alleging that all the conspirators violated the Racketeer Influenced and Corrupt Organizations Act (RICO statute, US Code, tit 18, § 1961 et *290 seq.). The complaint seeks damages and injunctive relief to restrain the defendants from using the stolen confidential and privileged information.
Shortly after commencing this civil action, FOJP was granted an expedited discovery order by a Judge of the District Court. All of the movants, as well as others, exercising Fifth Amendment privileges during their depositions in these discovery proceedings, refused to answer any questions going to the merits of the alleged conspiracy or to produce any documents.[2] FOJP urges that as a result of movants’ actions, which FOJP readily anticipated at the outset, FOJP has been prevented from obtaining any discovery, even under the liberal Federal civil discovery rules. Further, that its need for the Grand Jury materials is now greater, since there is no other source for the information to prosecute the civil action or to protect its affiliates in pending lawsuits.
The District Attorney has filed an affidavit in support of FOJP’s position and in opposition to the motion to vacate this court’s order of August 4, 1982.
Turning first to questions of procedure and standing raised by the parties, movants erroneously characterize the order as “ex parte”. FOJP’s application was made on notice to the District Attorney, the only party entitled to notice (see Judiciary Law, § 325; CPL 190.25; Matter of Aswad v Hynes, 80 AD2d 382, 383.) Although, on reflection, it might have been a more desirable practice to have directed that notice be given to the movants named in the original proceeding, since, among other things, it may have avoided the necessity of this proceeding.
It seems clear that all movants have standing. Any abuse of discretion in ordering disclosure could cause injury to the movants, since their rights to secrecy are at least colorably protected by controlling statutes (CPL 190.25; see Matter of Fritz v Huntington Hasp., 39 NY2d 339, 346; Matter of District Attorney of Suffolk County, 58 NY2d 436, affg 86 AD2d 294).
*291 CPL 190.25 (subd 4) and section 235 of the Judiciary Law give the court the discretion and power to order the disclosure of Grand Jury materials if the public’s interest for such disclosure outweighs its interest to maintain secrecy and confidentiality (People v Di Napoli, 27 NY2d 229). However, there must be shown a compelling and particularized need for disclosure, persuasive enough to overcome the strong presumption in favor of secrecy. This, of course, must be considered in the context of the historic attitude that has prevailed, that secrecy is an integral feature of Grand Jury proceedings (Matter of District Attorney of Suffolk County, supra; Pittsburgh Plate Glass Co. v United States, 360 US 395, 399), but is not absolute. (People v Di Napoli, supra.)
The Di Napoli court set forth some pertinent considerations for determining whether to release or retain the secrecy of Grand Jury minutes. These include: the necessity to prevent the flight of suspects; the protection of grand jurors from harassment; the prevention of subornation of perjury and the tampering with witnesses; the protection of the innocent from unfounded accusations; and the assurance to prospective Grand Jury witnesses that their testimony will be kept secret, so that witnesses will testify freely. (People v Di Napoli, supra, p 235.) The work of the Grand Jury involved in this proceeding has been completed. There is no danger of any target fleeing or for any interference with Grand Jury deliberations. All the movants, apparent targets of the investigation have disposed of the indictments voted against them by way of plea, and have been sentenced. There appear to be no innocent persons in need of protection against unfair accusations. Accordingly, the only concern here is the potential chilling effect of any prospective witness’ testimony in any other Grand Jury proceeding.
The policy of assuring the secretness of Grand Jury witnesses’ testimony does not in and of itself prevent the use of Grand Jury minutes. Since, it is reasonable to anticipate that such testimony may be put to further use in the public’s interest (Matter of Scotti, 53 AD2d 282, 288). The chilling effect factor alone cannot prevent disclosure *292 where an obvious public interest is served by disclosure (People v Di Napoli, 27 NY2d 229, supra).
It is of some significance to note that the Assistant District Attorney in charge of the Grand Jury investigation and prosecution of the movants, not only consented to the order in August, but opposes the application to vacate it.[3] (See Matter of City of Buffalo, 57 AD2d 47, 50; Matter of Quinn [Guion], 267 App Div 913, affd 293 NY 787, People v Di Napoli, supra). While the District Attorney’s consent to disclosure in and of itself is not dispositive, it is a factor which should be and has been taken into consideration by most courts in deciding the issue raised here. (See Matter of Quinn [Guion], supra; People v Di Napoli, supra; Matter of District Attorney of Suffolk County, 58 NY2d 436, supra; Matter of City of Buffalo, supra; Matter of Corporation Counsel of City of Buffalo, 61 AD2d 32; Dow Chem. Co. [Texas Eastern Transmission Corp.], 58 AD2d 628.)
What is persuasive here and can fairly be said to be pivotal when considered with other factors, is the unique factual situation that exists. In this court’s opinion, this sufficiently tips the balance in favor of disclosure, so as to overcome the presumption in favor of secrecy.
It was demonstrated in the prior proceeding, as well as in this proceeding, that not only are the minutes vital to the civil litigation but are the only source of information necessary to pursue that litigation. In other words, there are no other sources adequate to provide the information which FOJP seeks and needs.
It is manifest that there is a substantial public interest here. The very integrity of the judicial process and advocacy system is involved. The RICO lawsuit, among other things seeks to determine: the extent to which the activities of the movants, especially that of Smith, have corrupted the fair administration of justice; whether the movants were the only corrupt lawyers involved; and whether there are pending cases in any courts tainted by their *293 activities. In this regard, FOJP has made a reasonably persuasive showing that the Grand Jury investigation of the conspiracy may have only revealed the tip of the iceberg of corruption.[4] FOJP’s civil suit cannot be fairly characterized as strictly a “private” as distinguished from a “public” litigation, with the consequent distinctions that have been drawn by the courts, in granting access or limited access to Grand Jury minutes (cf. People v Di Napoli, 27 NY2d 229, 237, supra; Jones v State of New York, 79 AD2d 273, 276; Foley v City of New York, 75 Misc 2d 664; Marinetti v State of New York, 71 Misc 2d 62). FOJP and its affiliated hospitals and agencies in a sense are in a “grey area” because to a very large extent they receive their revenue and funding from taxpayers’ sources, both Federal and State, in the form of Medicare and Medicaid payments, and the like. The lawsuit involves the recovery and protection of those funds in the public’s interest. Moreover, any success by way of damages or injunctive relief could reasonably be expected to deter others from attempting to similarly subvert the judicial process.
Finally, the recent decision by the Court of Appeals in Suffolk County (supra), upon which the movants have a misplaced reliance, is distinguishable on several pertinent grounds. Among these are: no substantive indictments were returned on the subject matter of that Grand Jury investigation, the Grand Jury only issued a report; perjury indictments collaterally flowing from the investigation were still pending at the time disclosure was sought; there were individuals who were subpoenaed to testify, and who were excused after refusing to waive immunity, who may have been subjected to adverse publicity and unfounded accusations by release of the minutes; there was no showing of any particularized need for the minutes, nor any description or detail of the conduct which would be revealed by the minutes that would be the subject matter of *294 the proposed civil litigation; and there was no showing that the minutes were the only source of information to pursue the civil litigation.[5]
None of these conditions, which properly mitigate against disclosure, exist here. On the contrary, the facts and circumstances here lead to an opposite result, on the very reasoning and analysis of Judge Fuchsberg’s opinion in Suffolk County (supra). The court there did not reach the question of whether there was a proper exercise of discretion and the balancing of policies that is involved, because there was no initial showing of a compelling and particularized need for access to the Grand Jury minutes. Without such a demonstration, the discretionary process does not become operative because “there simply would be no policies to balance.” (Matter of District Attorney of Suffolk County, 58 NY2d 436, 444, supra.) However, there is a clear inference that had such a showing been made, the modern doctrine enunciated in Di Napoli (supra) that secrecy is not absolute would have been controlling, and a court could in the proper exercise of discretion grant disclosure where a compelling and particularized need was demonstrated.
FOJP, having met the compelling and particularized standard that is required to come within the exception to the general rule which favors secrecy over disclosure of Grand Jury proceedings, the motion to vacate the order granting disclosure is denied. That order is extended to include Mandell, in view of his guilty plea and sentence since the order was signed.

. Among the affiliated hospitals and agencies are the following:
Beth Israel Medical Center, Bronx-Lebanon Hospital Center, Jewish Hospital and Medical Center of Brooklyn, Joint Diseases North General Hospital, Hospital for Joint Diseases Orthopedic Institute, Long Island Jewish-Hillside Medical Center, Maimonides Medical Center, Montefiore Hospital and Medical Center, The Mount Sinai Hospital, Albert Einstein College of Medicine of Yeshiva University, Beach YM & YWHA, Boro Park YM & YWHA, Brookdale Village Housing Corporation, Israel Senior Citizen Housing Corporation, Jewish Association for Service for the Aged, Jewish Board of Family & Children’s Services, Metropolitan Jewish Geriatric Center.

. Depositions of Smith, Nov. 23. 1982; Schlossman, Jan. 10,1983; Mandell, Dec. 14, 1982; and Kressner. Nov. 30, 1982.

. It is also interesting to note that this Assistant District Attorney maintains this position, notwithstanding that during his deposition as a nonparty witness by movants’ attorneys in the RICO litigation, he exercised a law enforcement privilege, and refused to state whether there was any ongoing investigation of the movants or any of the activities which gave rise to their indictments. (Deposition, dated Feb. 8, 1983.)

. At one time during the Grand Jury investigation. Smith was considered to be a “co-operating” witness. Subsequently, the extent of his co-operation became suspect and questionable, as is revealed in an affirmation of the prosecutor in opposition to a motion by Smith to dismiss the indictment against him in the interests of justice (exhibit “D”, pp 5-7, annexed to FOJP’s affirmation in opposition in this proceeding).

. There, like here, a RICO litigation was involved.