OPINION OF THE COURT
Larry M. Himelein, J.
On March 5, 1935, Alfred Lindsay committed a double murder in Cattaraugus County. He was indicted on March 20,1935, the trial began on April 1, 1935, a guilty verdict was returned on April 5, 1935, the conviction was affirmed by the Court of Appeals on July 11, 1935 and defendant was executed on July *758 29, 1935. The Court declines to express any opinion on the balance between justice and efficiency in the case.
A Hollywood movie production company is now interested in the story and J. Michael Shane, the son of one of Lindsay’s attorneys and himself a practicing attorney, moves for release of the Grand Jury minutes to insure that the story is accurate. Mr. Shane claims the trial transcript is unavailable and any interested parties or their descendants are now deceased. The District Attorney opposes releasing the minutes on the grounds that Mr. Shane lacks standing and because Mr. Shane failed to demonstrate a compelling and particularized need for the minutes. This Court has reviewed the Grand Jury minutes in camera.
The secrecy of Grand Jury minutes is not absolute and it is within the sound discretion of the trial court to release the minutes (see, CPL 190.25 [4] [a]; People v Di Napoli, 27 NY2d 229). A presumption of confidentiality, however, attaches and can be overcome only by a threshold showing of a “compelling and particularized need for access” (People v Fetcho, 91 NY2d 765, 769). If this initial burden is met, “the trial court must then balance the public interest for disclosure against the public interest favoring secrecy” (id,.).
The traditional reasons for the confidentiality of Grand Jury minutes include “preserving the reputations of those being investigated by and appearing before a Grand Jury, safeguarding the independence of the Grand Jury, preventing the flight of the accused and encouraging free disclosure of information by witnesses” (People v Fetcho, supra at 769; Matter of District Attorney of Suffolk County, 58 NY2d 436, 444). However, while numerous cases have addressed releasing Grand Jury minutes for use in litigation, few cases have addressed the issue of general publication to the press or media.
In Matter of Carey v State of New York (68 AD2d 220), then-Governor Carey sought to release excerpts from the Grand Jury investigation into the Attica uprising. Doubt had been cast on the integrity of the various prosecutions and the claimed laudable purpose for publication was to provide the public with more information about the criminal justice system, the press, and police response to the riot. Nonetheless, the Fourth Department refused to permit disclosure of the minutes because the reputations of unindicted individuals could be harmed, the nature of the disclosure “far exceed [ed] anything previously authorized by any court,” and the public interest was not great enough to justify disclosure (68 AD2d at 228- *759 230). Interestingly, the Fourth Department later allowed disclosure of these documents to (1) the Division of State Police for purposes of departmental discipline, and (2) litigants in the civil lawsuits related to the Attica uprising (see, Matter of Scotti, 53 AD2d 282; Jones v State of New York, 79 AD2d 273).
In Matter of Grand Jury Investigation (139 Misc 2d 282), the court refused a District Attorney’s request to publish the Grand Jury minutes in a matter of heightened public interest. There, as in Carey, unindicted individuals were the subject of investigation and their interests had to be protected by refusing the disclosure request.
In contrast to Grand Jury Investigation and Carey is the more recent case of People v Cipolla (184 Misc 2d 880), which granted a newspaper’s application for disclosure of the Grand Jury minutes. There, county officials had been sued civilly in Federal court on the basis that they had caused falsified documents to be presented to the Grand Jury and at the trial that resulted in the acquittal of the criminal defendants. These public officials successfully argued that they needed the Grand Jury minutes to defend against the Federal action. When the local publishing company also moved for disclosure, the court granted the release, reasoning that the Grand Jury record could “reach the public via the Federal courts no matter what happens here” (at 882), and the integrity of the Grand Jury and county government was called into question, which was a matter of serious public concern.
The cases of Cipolla, Carey and Matter of Grand Jury Investigation are of limited assistance here. Carey and Matter of Grand Jury protected the interests of unindicted individuals, while here, Lindsay was indicted and later convicted and no other party was ever the subject of the investigation. Cipolla relied, in part, on the prior release of the Grand Jury minutes, but, here, we do not know whether the Grand Jury testimony was released during the trial. Today, of course, the minutes would have been released to the defense prior to the trial or at a pretrial hearing (CPL 240.20, 240.44). The records, however, reveal that the District Attorney allowed the press to have copies of all of the photographs, including those which had been presented to the Grand Jury!
Counsel’s application must be considered in light of the two-part test recognized by the Court of Appeals, i.e., balancing of interests and assessment of need (see, People v Fetcho, supra). If this case required only a balancing of interests and consideration of the reasons for secrecy, it would be easily decided. The *760 Grand Jury testimony was taken more than 65 years ago, the witnesses are likely deceased, no witness testified in a manner that would expose him or her to civil liability or recourse, no unindicted individual was considered by the Grand Jury, and the defendant was found guilty after a trial (see, SSAC, Inc. v Infitec, Inc., 198 AD2d 903). Furthermore, when considered in light of the mandate to disclose the Grand Jury testimony of witnesses who later testify at trial, the release, here, of the testimony of the six Grand Jury witnesses would not create a significant impact on the independence of future Grand Juries and witnesses.
The more problematic issue concerns whether the threshold requirement of a “particularized and compelling need” was shown. Although the need for the minutes is “particularized” because the trial transcripts are lost and evidence is not available from other sources, is the need compelling? Capital cases are matters of serious public concern that merit scrutiny, but the courts have rarely granted, or even considered, releasing Grand Jury minutes for the purpose of general publication (see, Matter of Carey, supra; People v Di Napoli, supra).
Nonetheless, capital cases are a great and compelling public concern and without the minutes the Lindsay case cannot be reviewed accurately by the public. Indeed, the contrast between the handling of a capital case then and now is fascinating. Further, the District Attorney who prosecuted the case released Grand Jury evidence to the public. Also, in today’s legal world, the minutes would have been supplied to the defense and Mr. Shane would have been able to simply retrieve them from his father’s file. Finally, the factors generally relied on to deny release, i.e., (1) prevention of a suspect’s flight; (2) protection of the grand jurors from interference; (3) prevention of peijury and tampering with witnesses; (4) protection of an innocent suspect if no indictment is returned; and (5) assuring witnesses that their testimony will be kept secret (see, People v Di Napoli, supra), simply have no relevance more than 65 years after the fact.
Accordingly, the application is granted.