*709 OPINION OF THE COURT
Steven W. Fisher, J.
This is a joint application by NYP Holdings, Inc., the New York Times Company, Daily News LP, Newsday Inc., the National Broadcasting Company and the Associated Press (hereinafter the movants) for an order unsealing certain evidence presented to the grand jury that returned Kings County Indictment Nos. 3515/2003, 3516/2003, 3517/2003, 3519/2003, and 3520/2003.[1] The indictments charge a number of individuals with crimes relating to the handling of matrimonial cases in the Supreme Court of Kings County. Among those named are a court clerk, a court officer, and a justice of the court.
In the course of the investigation that led to the indictments, electronic monitoring produced approximately 1,009 audiotapes, 64 videotapes, and 40 compact disks.[2] With the permission of the court, those recordings are now in the process of being reproduced in order to allow copies to be provided to the defendants, together with previously provided copies of (1) warrants authorizing electronic surveillance, (2) orders renewing, extending, and amending those warrants, and (3) applications, supporting documents, and progress reports, submitted in connection with the issuance of the warrants and orders.[3]
The movants now seek access to the videotapes and audiotapes of the accused justice that were presented to the grand jury that indicted him. They contend that CPL 190.25 (4) (a) confers upon the court discretion to order the disclosure of grand jury evidence to the press and public “where the public interest in the disclosure of [that evidence] outweighs the public interest in keeping [the evidence] secret” (Bolger affidavit at 3).[4] Maintaining that the circumstances at bar should persuade the court to exercise that discretion in favor of disclosure, the movants argue:
*710 “If ever there were a case where the public interest in disclosure outweighs the public interest in secrecy, this is that case. [The accused Justice] was an elected official and a sitting New York State court judge at the time of his alleged wrongdoing. He is charged with accepting gifts to influence the outcome of matrimonial disputes and disputes about the custody of children — and he is charged with performing these illegal acts while in a New York State courthouse. There simply can be no subject of higher importance to the public than the alleged corruption of an elected official. The videotapes and audiotapes that the News Organizations seek contain information that strikes at the very heart of our country’s notion of self-government” (Bolger affidavit at 3-4).
The defendants in the criminal actions oppose the application.[5] They argue that the movants have no First Amendment or common-law right to access to the tapes and have failed to demonstrate a compelling and particularized need for them. They further contend that unsealing tapes produced through electronic surveillance would present a heightened and unjustified risk to privacy rights protected under both state and federal law.
There is little doubt that intense public interest surrounds these criminal cases,[6] and understandably so. If the charges here are true, they establish something more than individual acts of corruption and greed; they suggest that those corrupt acts compromised the integrity of the process by which the highest trial-level court in the state’s most populous county handled some of its most sensitive cases.
Admittedly, notwithstanding the considerable news coverage already generated, the release of the tapes might well add to the public’s understanding of the charges and their implica *711 tions (cf. Nixon v Warner Communications, Inc., 435 US 589, 602 [1978]). But there are other considerations that weigh heavily against disclosure of the tapes at this time.
The tapes are part of the evidence presented to the grand jury that indicted the accused justice. Historically, and for good reason, a strong presumption of confidentiality attaches to the record of grand jury proceedings — a presumption that can be overcome only by the demonstration of a compelling and particularized need for access to the grand jury material sought (see, e.g., People v Fetcho, 91 NY2d 765, 769 [1998]).[7]
The movants argue that disclosure is appropriate if the court finds that the public interest in disclosure outweighs the public interest in maintaining the secrecy of grand jury evidence. But our Court of Appeals has repeatedly explained that, “[a]s a threshold matter, a party seeking disclosure of grand jury [materials] must establish a compelling and particularized need for them [and o]nly then must the court balance various factors to assess, in its discretion, whether disclosure is appropriate under the circumstances presented” (People v Robinson, 98 NY2d 755, 756 [2002]; see, also, Matter of District Attorney of Suffolk County, 58 NY2d 436, 444 [1983]; Matter of Lungen v Kane, 88 NY2d 861, 862-863 [1996]). Thus, in the case at bar, the court need not undertake to balance competing public interests until it is first convinced that the movants have demonstrated a “compelling and particularized need” for the tapes they seek.
On that issue, two Appellate Division holdings seem particularly instructive.
In Matter of Carey (68 AD2d 220 [4th Dept 1979]), the Governor and the Attorney General were attempting to fulfill a promise to release to the public a report evaluating the investigations and prosecutions that followed the insurrection at the Attica Correctional Facility. The report contained excerpts of the evidence presented to the grand juries that conducted inquiries into the matter.
While acknowledging the importance of the public’s right to have access to information regarding matters of great public concern (see, 68 AD2d at 229), the Court nevertheless held that *712 considerations of grand jury secrecy prevented disclosure. The Court concluded that disclosure of grand jury evidence solely for the purpose of generalized publication was impermissible. (Id.)
And, in Matter of Hynes (179 AD2d 760 [2d Dept 1992], lv denied 79 NY2d 757 [1992]), the District Attorney of Kings County sought permission to release to the public the minutes and records of the grand jury that declined to indict an Hasidic man whose vehicle had struck and killed a seven-year-old African-American child. The incident sparked a civil disturbance that came to be known as the “Crown Heights riots.”
The District Attorney argued that public disclosure of the grand jury evidence was necessary because it would “both curb the community unrest which erupted when the Grand Jury failed to indict the driver of the automobile, and restore confidence in the Grand Jury system and in his office” (179 AD2d at 760). The Court, however, denied the request, holding that the District Attorney’s “theories do not constitute the compelling and particularized need necessary to overcome the presumption of confidentiality which attaches to Grand Jury proceedings.” (Id.; see, also, Matter of Application for Order Directing Disclosure of Minutes of Grand Jury Investigation, 139 Misc 2d 282 [Sup Ct, Bronx County 1988, Roberts, J.] [finding no compelling and particularized need for the public release of the minutes of the grand jury investigation into a woman’s widely-publicized arrest, incarceration, and death in police custody].)
It seems plain that, if no compelling and particularized need for public disclosure existed in cases involving the Attica insurrection and the Crown Heights riots, none exists here. Indeed, controlling case law seems to suggest that the “compelling and particularized need” standard is not met when the only articulated purpose for the release of grand jury evidence is to inform the public of its content.
People v Cipolla (184 Misc 2d 880 [Rensselaer County Ct 2000, McGrath, J.]), relied on by the movants, is not to the contrary. There, the court permitted public disclosure of grand jury evidence, but only after the defendants in the case had been acquitted, and the grand jury evidence had been released for use in a federal lawsuit challenging the integrity of the grand jury process itself. Here, the case is still pending, the tapes have not been released for any other purpose, and the integrity of the grand jury proceedings is not in issue.
Significantly, those courts that have permitted disclosure of grand jury evidence have uniformly done so for some purpose *713 other than generalized public dissemination. (See, e.g., Matter of Scotti, 53 AD2d 282 [4th Dept 1976] [disclosure permitted for purposes of disciplinary action against police officers and correctional employees]; Matter of FOJP Serv. Corp., 119 Misc 2d 287 [Sup Ct, NY County 1983, Dontzin, J.] [disclosure permitted to allow a nonprofit institution to bring civil proceedings and to defend its affiliates in lawsuits]; cf. People v Lindsay, 188 Misc 2d 757 [Cattaraugus County Ct 2001, Himelein, J.] [disclosure permitted to insure accuracy of proposed motion picture involving a 66-year-old capital case].)
The movants’ reliance on the seminal case of People v Di Napoli (27 NY2d 229 [1970]) is clearly misplaced. In Di Napoli, the Court of Appeals examined the five most frequently mentioned reasons for maintaining grand jury secrecy and found none sufficient to prevent disclosure of grand jury evidence to the Public Service Commission to aid the agency in its investigation of rates charged by an electric utility under its supervision. Importantly, in explaining its holding, the court took pains to point out that its ruling “will not sanction any general disclosure or widespread publication of the minutes” (27 NY2d at 237), and involved “a proceeding long concluded.” (Id. at 233.)[8] In contrast, the tapes here are sought precisely for the purpose of general disclosure and widespread publication, and the indictments they helped produce are still pending.
Notably, the movants are unable to cite a single instance in which a court permitted the release of grand jury evidence in a case that was still pending (cf. Matter of FOJP Serv. Corp., 119 Misc 2d at 289 [allowing inspection of grand jury evidence in a multi-defendant case, except as to the defendant whose case was still pending]).
Moreover, apart from considerations of grand jury secrecy, other important concerns argue against public disclosure at this time.
Several of the tapes the movants seek are the fruit of electronic surveillance. Although now regarded as an essential tool for law enforcement (see, e.g., People v Darling, 95 NY2d 530, 535 [2000]), electronic surveillance has long been viewed as presenting a unique and insidious threat to privacy requiring extraordinary safeguards (see, e.g., People v Washington, 46 NY2d 116,122 [1978]; Berger v New York, 388 US 41, 58 [1967]; *714 see, also, People v Capolongo, 85 NY2d 151, 166 n 8 [1995]). Both federal and state laws strictly control when electronic surveillance may be authorized, how it may be conducted, and under what circumstances the information it produces may be disclosed. (See, Omnibus Crime Control and Safe Streets Act of 1968 tit III, 18 USC § 2510 et seq.; CPL art 700.)
It is, of course, well settled that information gathered through unlawful electronic surveillance must be excluded as evidence in any court proceeding (see, e.g., Katz v United States, 389 US 347 [1967]; People v Sher, 38 NY2d 600 [1976]; 18 USC § 2515; CPL 710.20 [2], [7]; CPLR 4506). But, because the protection of privacy is such an overriding concern (see, e.g., Gelbard v United States, 408 US 41, 48 [1972]), courts have also held that the fruits of unlawful electronic surveillance must be withheld, not only from use in the courtroom, but from public disclosure as well (see, e.g., In re Globe Newspaper Co., 729 F2d 47, 54 [1st Cir 1984]; see also, United States v Dorfman, 690 F2d 1230, 1234 [7th Cir 1982]; Matter of Dampman v Morgenthau, 158 Misc 2d 102, 113-114 [Sup Ct, NY County 1993, Rothwax, J.]).
In the case at bar, the defendants, including the accused justice, have expressed the intention to challenge the lawfulness of the electronic surveillance that produced the tapes the movants now seek. It would be inappropriate for the court to release those tapes before that challenge is heard.
Finally, it is not without significance that the tapes reflect conversations relating to pending matrimonial cases. New York law carefully protects the confidentiality of matrimonial matters, especially where, as here, issues of child custody are involved (see e.g., Domestic Relations Law § 235; 22 NYCRR 205.4 [b] [3]; cf. Anonymous v Anonymous, 263 AD2d 341, 342 [1st Dept 2000] [acknowledging a “special interest in protecting minors from harm where sensitive matters are involved”]).
When the case against the accused justice proceeds to hearings and trial, the movants and all other members of the public and press will be entitled to exercise their constitutional and common-law right of access (see, e.g., Press-Enterprise Co. v Superior Ct., 478 US 1 [1986] [hearings]; Richmond Newspapers v Virginia, 448 US 555 [1980] [trials]). But, at this time, before any substantive proceedings take place in these pending matters, and without a showing of a compelling and particularized need, it would be inappropriate for the court to release to the public grand jury evidence consisting of the fruits of *715 untested electronic surveillance dealing with sensitive matrimonial matters including the custody of children.
Accordingly, for all the foregoing reasons, the application should be denied in all respects.

. The application was presented to me in accordance with the provisions of an order of the Chief Administrative Judge, dated May 21, 2003, which temporarily assigned me to the Supreme Court of the Second Judicial District to preside for all purposes in the five specified criminal actions, and in any actions or proceedings related to them.

. See, letter of Assistant District Attorney John C.L. Dixon, dated May 23, 2003, at 2.

. See, unsealing order issued on June 9, 2003, in connection with the five specified criminal actions.

. CPL 190.25 (4) (a) provides “Grand jury proceedings are secret, and no grand juror, or other person specified in subdivision three of this section or *710 section 215.70 of the penal law, may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding. For the purpose of assisting the grand jury in conducting its investigation, evidence obtained by a grand jury may be independently examined by the district attorney, members of his staff, police officers specifically assigned to the investigation, and such other persons as the court may specifically authorize. Such evidence may not be disclosed to other persons without a court order. Nothing contained herein shall prohibit a witness from disclosing his own testimony.”

. The District Attorney takes no position on the movants’ request for the unsealing and disclosure of the tapes.

. See, e.g., movants’ exhibits A and B.

. On the issue of grand jury secrecy, the Court of Appeals observed: “The reasons for this venerable and important policy include preserving the reputations of those being investigated by and appearing before a Grand Jury, safeguarding the independence of the Grand Jury, preventing the flight of the accused and encouraging free disclosure of information by witnesses” (People v Fetcho, 91 NY2d at 769; see, also, Melendez v City of New York, 109 AD2d 13 [1st Dept 1985]).

. The release of the minutes was ordered “more than two years after the conclusion of the grand jury proceedings, the conviction of the appellants by guilty pleas and the payment of fines” (People v Di Napoli, 27 NY2d at 235).