HECTOR MELENDEZ and Others, by Their Mother and Natural Guardian, ROSE GUINAN-MELENDEZ, Respondents, v CITY OF NEW YORK, Respondent, and ROBERT M. MORGENTHAU, as District Attorney of New York County, Appellant.

First Department, June 4, 1985

## APPEARANCES OF COUNSEL

*Vija Kemanis* of counsel (*Amyjane Rettew* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for appellant.

*Karen Hutson* of counsel (*Fay Leoussis* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for City of New York, respondent.

*John F. Nash* of counsel (*Lipsig, Sullivan & Liapakis, P. C.,* attorney), for Hector Melendez and others, respondents.

## OPINION OF THE COURT

KASSAL, J.

The issue is whether, under the facts of this case, the court properly directed disclosure of: (1) testimony presented to the Grand Jury by the plaintiff and his wife, (2) testimony given by a police officer employed by defendant City of New York, and (3) a statement by the police officer tape-recorded by the District Attorney's office in connection with the Grand Jury proceedings.

### BACKGROUND

On February 8, 1983, plaintiff Hector Melendez was shot by Police Officer Oscar Medina during an arrest. At the time, Melendez had been armed with a knife and was arrested for assault, menacing and criminal possession of a weapon. It is claimed that the shooting resulted in serious personal injuries to Melendez, including lacerations of the liver and loss of a kidney. Subsequently, an investigation of the incident was conducted by the District Attorney's office, during which a tape-recorded

statement was made by Officer Medina. In April 1984, Melendez, his wife, Rose, who is also a plaintiff in this action, and Medina testified before the Grand Jury, the officer testifying under a waiver of immunity. No indictment was returned against Melendez and the Grand Jury declined to take any action against the officer, whereupon the charges against Melendez were dismissed on April 30, 1984.

On July 27, 1983, less than six months after the incident and before the matter had been presented to the Grand Jury, this action was instituted by Melendez, his wife and children, to recover damages solely against the City. The complaint charged defendant, *inter alia,* with excessive force and negligence in connection with the shooting, violation of approved police practice and negligence in the hiring, training and retention of Medina as a police officer, with knowledge of his alleged vicious propensity.

Following dismissal of the criminal charges, plaintiffs moved to compel the District Attorney to produce, *inter alia,* the Grand Jury testimony of Melendez, his wife and Medina and the tape-recorded statement of the police officer. In support of the application, it was argued that there was no further public interest in maintaining the secrecy of the Grand Jury minutes since that proceeding had been terminated and all charges dismissed. It was also contended that the information was critical in terms of trial preparation, since plaintiffs claimed that they had been unable to obtain any meaningful discovery. Although Medina had testified before the Grand Jury under a waiver of immunity, when he appeared for an examination before trial in the civil action, he invoked his 5th Amendment privilege against self-incrimination, thus precluding any substantive inquiry of him with regard to the shooting. He was directed to reappear for a continued deposition but the City did not produce him. The City, however, did join in this application.

The District Attorney cross-moved for a protective order, asserting that the public interest in maintaining the secrecy of Grand Jury proceedings far outweighed the private interests of these litigants and, further, that disclosure would have a "chilling effect" on future Grand Jury investigations, which required assurance that testimony would be kept confidential. It was argued that production, if at all, could only be had at the time of trial and would be limited to those portions of the minutes needed to impeach a witness upon cross-examination or to refresh his recollection. The tape-recorded statement, it was urged, was not subject to discovery under the "public interest

privilege" which attaches to communications made to public officers in the performance of their duties.

Special Term, without any discussion of the issues, granted the motion and denied the cross motion, directing that the transcripts and statement be made available to the Justice presiding at Special Term, Part II, to supervise disclosure and to conduct an in camera inspection.

CONFIDENTIALITY OF GRAND JURY PROCEEDINGS

"COMPELLING AND PARTICULARIZED NEED"

The disclosure of Grand Jury testimony involves a balancing of competing interests; on the one hand, there is the principle favoring liberal disclosure under CPLR article 31 and, as a countervailing force, the strong public policy of secrecy for Grand Jury proceedings. The public policy underlying the secrecy surrounding Grand Jury proceedings is expressed in CPL 190.25 (4): "Grand jury proceedings are secret, and no grand juror, or other person specified in subdivision three of this section or section 215.70 of the penal law, may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding. For the purpose of assisting the grand jury in conducting its investigation, evidence obtained by a grand jury may be independently examined by the district attorney, members of his staff, police officers specifically assigned to the investigation, and such other persons as the court may specifically authorize. Such evidence may not be disclosed to other persons without a court order. Nothing contained herein shall prohibit a witness from disclosing his own testimony."

This underlying policy is a necessary requisite to the proper functioning of the Grand Jury system (see, Douglas Oil Co. v Petrol Stops Northwest, 441 US 211, 218-219, n 9; Matter of District Attorney of Suffolk County, 58 NY2d 436, 443). Historically, the overriding need for confidentiality had its roots prior to the founding of our Nation and existed as a protection against governmental tyranny and oppression. Thus, over a century ago, in 1870, it was observed in People v Naughton (38 How Prac 430, 437-438):

"The grand jury had its origin at a time when there raged a fierce conflict between the rights of the subject and the power of the crown. It was established to secure to the subject a right to appeal to his peers, under the immunity of secrecy and irresponsibility, before the government could bring him to trial. It was a

right wrung from the government to secure the subject against oppression.

"The principles of secrecy and irresponsibility were incorporated into the system at the instance, and for the protection of the subject."

These views are reflected in the legislative provision which proscribes the unauthorized disclosure of "the nature or substance of any grand jury testimony" (Penal Law § 215.70). Recently, the Court of Appeals reaffirmed the rule of secrecy and held that it applies not only to the targets of Grand Jury investigations, but also to those who present evidence before the Grand Jury, observing that the protection secures "the reputations of those investigated by or appearing before a Grand Jury * * * from unfounded accusations." (*Matter of District Attorney of Suffolk County, supra,* at pp 443-444).

The reasons for maintaining secrecy and confidentiality in Grand Jury proceedings, necessary to ensure the independence of the Grand Jury system, was addressed by the court in *People v DiNapoli* (27 NY2d 229, 235): "Those most frequently mentioned by courts and commentators are these: (1) prevention of flight by a defendant who is about to be indicted; (2) protection of the grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the grand jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely."

In *DiNapoli (supra)*, the New York District Attorney had been conducting an intensive investigation of rigged bidding among construction companies in connection with contracts with several utilities. The Grand Jury returned indictments against several individuals and companies, each having pleaded guilty and paid a fine. Subsequently, the Public Service Commission, charged with the supervision of public utilities under Public Service Law § 66, instituted a proceeding to recover costs incurred in the contracts involved in the scheme and sought to inspect the Grand Jury minutes in connection therewith. The Court of Appeals, recognizing the need to balance the competing public interests of liberal discovery against that of secrecy, held that disclosure, under the facts of that case, would not have "a chilling effect on the ability of future grand juries to obtain witnesses." (27 NY2d, at p 236.) In so holding, it took into

account that the commission was a governmental body, which had sought the minutes to assist in its investigation in the public's interest and in preparation for the public hearings. The court ordered production, relying upon the established principle that the use of Grand Jury testimony for impeachment purposes in a subsequent trial, civil or criminal, was "commonplace and perfectly proper." (*People v Di Napoli, supra,* at p 237; *see also,* 8 Wigmore, Evidence § 2363, at 737 [McNaughton rev 1961]; McCormick, Evidence § 150, at 313 [1954].)

More recently, as stated, the standard was adhered·to in *Matter of District Attorney of Suffolk County* (58 NY2d 436, *supra*), where the Suffolk County District Attorney had obtained an ex parte order which authorized the use of Grand Jury minutes in a civil action. The Grand Jury investigation there had centered upon allegations of fraud and political corruption in the construction of a county sewer district and, although there were no indictments other than for perjury, the Grand Jury did criticize certain relationships between public officials and private interests. The application for the ex parte order was supported by a conclusory affirmation of an Assistant District Attorney, who asserted that the transcripts were required and necessary "in the interests of justice." The Court of Appeals affirmed the order of the Appellate Division, Second Department, which had vacated the ex parte order, holding that the District Attorney failed to demonstrate a "compelling and particularized need" for access to the information alleged to be relevant to the pending Federal action.

While recognizing that confidentiality served to ensure the independence of the Grand Jury system and encourage free disclosure of information by those summoned before it, the court did take cognizance of the need for disclosure in certain instances upon a showing of a "compelling and particularized need" for access to the information, sufficient to overcome the presumption of secrecy which attends Grand Jury proceedings: "Nevertheless, the rule of secrecy is not absolute and, in the discretion of the trial court, disclosure may be directed when, after a balancing of a public interest in disclosure against the one favoring secrecy, the former outweighs the latter (*People v Di Napoli, supra*). But since disclosure is 'the exception rather then the rule', one seeking disclosure first must demonstrate a compelling and particularized need for access (Pitler, NY Crim Prac under the CPL, § 5.7, p 236). However, just any demonstration will not suffice. For it and the countervailing policy ground it reflects must be strong enough to overcome the presumption of confidentiality. In short, *without the initial showing of a compel-*

*ling and a particularized need, the question of discretion need not be reached, for then there simply would be no policies to balance."* (58 NY2d, at p 444; emphasis added.)

The Appellate Division, Second Department, applied the "compelling and particularized need" standard in *Ruggiero v Fahey* (103 AD2d 65), a case with a factual situation strikingly similar to our case. In *Ruggiero,* plaintiff sought to examine the Grand Jury testimony of police department witnesses for use in a pending action for damages as a result of the fatal shooting of plaintiff's son by two police officers. There, as here, the Corporation Counsel, representing the municipal defendants, joined in plaintiff's application to release the stenographic minutes of the Grand Jury proceeding. The District Attorney opposed production, relying upon the public interest in maintaining secrecy to ensure the integrity of the Grand Jury, which, it argued, outweighed the private interest favoring disclosure. While the court recognized that Grand Jury testimony may be used to impeach a witness or to refresh recollection (*see, People v Di Napoli,* 27 NY2d 229, 237, *supra; Jones v State of New York,* 79 AD2d 273), it denied disclosure, holding that the presumption of confidentiality was not overcome by conclusory statements that the testimony was needed to adequately prepare for trial. In so holding, the court took into account the possible adverse effect upon the functioning of future Grand Juries, recognizing that the system is, in great measure, dependent upon imparting to witnesses a trust that their testimony would remain confidential. It was held that to sanction disclosure on the minimal showing which had been made in that case, "would only undermine that trust." (103 AD2d, at p 71.) Thus, it held (*supra,* at pp 71-72): "In sum, the presumption of confidentiality of Grand Jury proceedings is not of such gossamer strength as to be overcome by the unremarkable statements of need presented in the case at bar. The parties have simply failed to satisfy the threshold requirement of showing a compelling and particularized need for the Grand Jury testimony requested."

### POLICE OFFICER'S GRAND JURY TESTIMONY

■ Applying the standard here, we are in agreement that neither plaintiffs nor the City has sufficiently demonstrated a compelling and particularized need to warrant pretrial disclosure of the police officer's testimony before the Grand Jury. The conclusory claim by counsel that the Grand Jury minutes are needed to prepare for trial or that they would be useful in impeaching witnesses on cross-examination is insufficient to overcome the presumption of confidentiality. The fact that the

information may generally be useful for those purposes is "unpersuasive for the reason that such claims can be made in any case involving a civil action and prior Grand Jury testimony." (*Ruggiero v Fahey,* 103 AD2d 65, 71, *supra.*) The failure of proof, both by plaintiffs and the City, is dispositive and precludes the exercise of discretion (*see, Matter of District Attorney of Suffolk County,* 58 NY2d 436, 444, *supra*).

This is not to indicate that, upon an adequate showing, an application may not be renewed before the Trial Justice, who, in the exercise of discretion, may proceed in camera, to determine the extent production is required for purposes of impeachment or to refresh recollection (*see, People v Di Napoli, supra,* at p 237; *Jones v State of New York, supra,* at pp 276-277; *Matter of U.S. Air for Disclosure of Grand Jury Testimony* [*Salanger*], 97 AD2d 961; *Herring v City of Syracuse,* 81 Misc 2d 1060, 1062-1063). If there be such an application, made upon a requisite showing to overcome the presumption of confidentiality, the Trial Justice may then determine whether production should be directed by balancing these competing public interests. No such determination, however, may be made at this stage, where disclosure is sought, not for impeachment, but under the disclosure provisions of CPLR article 31.

The fact that the Grand Jury proceeding has terminated and that there have been no indictments does have a bearing on the issue. A further factor which militates against disclosure here is that relief is sought by private litigants to promote their own personal interests. Thus, in *Jones v State of New York* (*supra,* at p 276), Justice Simons (now Associate Judge of the Court of Appeals) observed: "When considering such an application, the court must balance the public interest in the secrecy of Grand Jury proceedings against the same public interest served by disclosure. The decision may turn on who the applicant is, what he seeks and the purpose for which he seeks it. Limited publication granted to a public official or agency to further some official duty in protecting the public interest is at one end of the spectrum (see *Matter of Scotti,* 53 AD2d 282, *supra*). The other extreme is general discovery sought by a private litigant to prepare for litigation, relief so rare that only one case in which it has been granted is called to our attention and that a case in which there were public interest overtones (*Matter of Quinn* [*Guion*], 267 App Div 913, affd 293 NY 787)."

The foregoing disposes of so much of the application as sought disclosure of the Grand Jury testimony of Officer Medina. Clearly, no compelling necessity for this production has been

demonstrated nor is the determination affected by the fact that, in the civil action, Medina invoked his 5th Amendment privilege against self-incrimination at his examination before trial. It does not appear that plaintiffs are in any way precluded from making out a prima facie case, particularly considering that Melendez and his wife are available to testify as to the underlying circumstances pertaining to the incident. On that basis, plaintiffs' claim that they are in a "no win" situation is without merit.

Clearly, disclosure of Grand Jury testimony is not needed to establish the charge that the City failed to properly train and teach its police officers or that there was negligence in the hiring or retention of Medina. There are other available witnesses. To the extent that plaintiffs seek production of documents and other information concerning the allegations of "improper training and retention of a vicious police officer," CPLR article 31 does afford ample remedy through regular discovery methods. At this stage, such disclosure is unwarranted and would impair the independence of the Grand Jury process by infringing upon the assurance to witnesses that their testimony will be kept confidential, necessary to encourage persons summoned before a Grand Jury to testify freely (*see, People v Di Napoli*, 27 NY2d 229, 235, *supra; Matter of District Attorney of Suffolk County*, 58 NY2d 436, 444, *supra; Ruggiero v Fahey*, 103 AD2d 65, 67, 71, *supra; Matter of FOJP Serv. Corp.*, 119 Misc 2d 287, 291).

### TAPE-RECORDED STATEMENT TO DISTRICT ATTORNEY

■ The same holds true with respect to the tape-recorded statement by the police officer, which was taken by the District Attorney in conjunction with his official investigation of the incident. The statement is akin to and should be treated in the same manner as Grand Jury testimony for the purposes of disclosure. Furthermore, since the statement was made to a public officer in the performance of his official duties, in the context of the criminal investigation, the statement is additionally protected by the "public interest privilege." This privilege, albeit qualified, has been judicially recognized to shield such statements from disclosure by applying a similar standard, requiring a balancing of the litigant's need for production against the potential harm to the public from such disclosure (*Cirale v 80 Pine St. Corp.*, 35 NY2d 113, 117-119; *Matter of Langert v Tenney*, 5 AD2d 586, 588-589, *appeal dismissed* 5 NY2d 875; *Matter of Knight v Gold*, 53 AD2d 694, *appeal dismissed* 43 NY2d 841; *People v Keating*, 286 App Div 150, 152-

153). Taking into account the context in which the statement was made, the general conclusory claim that production would be useful to plaintiffs is insufficient. Again, whether production will be warranted at trial for impeachment or otherwise need not be addressed at this time, but will depend upon the same balancing criteria applicable with respect to the police officer's Grand Jury testimony.

### PLAINTIFFS' GRAND JURY TESTIMONY

■ However, plaintiffs are entitled to immediate disclosure of their own Grand Jury testimony. The statute, while directing secrecy, expressly provides that a witness is not precluded "from disclosing his own testimony" (CPL 190.25 [4]). It has been held that the principle of confidentiality does not prevent a witness from revealing his testimony before a Grand Jury. (*People v Minet,* 296 NY 315, 324; *People v Doe,* 95 Misc 2d 175, 176; *People v Naughton,* 38 How Prac 430, 440, *supra.*) In addition, in civil actions, a party has a right to obtain a copy of his own statement (CPLR 3101 [e]), which extends to both prior written and recorded statements. Moreover, had the Grand Jury proceeding resulted in an indictment, the defendant in such a proceeding would have been entitled to demand production of any transcript of his Grand Jury testimony (CPL 240.20 [1] [b]). In our view, under the circumstances of this case, particularly the fact that the Grand Jury proceeding has been closed with no indictments, these considerations apply to permit a party in a subsequent civil action to obtain a copy of his own testimony, especially where, as here, it has a direct bearing upon the issues in the civil litigation. On this basis, we agree with so much of the determination at Special Term which directed production of the Grand Jury testimony of Melendez and his wife.

Insofar as concerns the testimony and statement by the police officer, a further factor is that Medina has apparently not sought or authorized production of his statement and/or Grand Jury testimony. While his actions do have a bearing upon the potential liability of the City, as his employer, he has not been joined in the action. Taking into account the underlying policy of secrecy in Grand Jury proceedings, which likewise applies to the taped statement, there may very well be a conflict between the City and Medina on such disclosure. The record does not reflect that the officer had authorized the Corporation Counsel to proceed on his behalf in its request for disclosure. The fact that Medina invoked his 5th Amendment privilege at the examination before trial does indicate that he had no intention of making any voluntary disclosure. Under the circumstances, the same

policy considerations which compel production of the transcript of plaintiffs' Grand Jury testimony, mandate that the testimony of the police officer and the statement issued to the District Attorney in conjunction with the then pending criminal investigation be withheld.

Accordingly, the order, Supreme Court, New York County (Helen Freedman, J.), directing disclosure of the transcript of the Grand Jury testimony of plaintiffs and the police officer and the tape-recorded statement of the officer made to the District Attorney's office, denying the District Attorney's cross motion for a protective order, should be modified, on the law, without costs or disbursements, to the extent of directing immediate disclosure of the transcript of plaintiffs' testimony before the Grand Jury, denying the motion to produce the transcript of the Grand Jury testimony of the police officer and the statement furnished to the District Attorney's office, granting the cross motion for a protective order to that extent, and otherwise affirmed.

KUPFERMAN, J. P., SANDLER and BLOOM, JJ., concur.

Order, Supreme Court, New York County, entered on June 26, 1984, unanimously modified, on the law, without costs and without disbursements, to the extent of directing immediate disclosure of the transcript of plaintiffs' testimony before the Grand Jury, denying the motion to produce the transcript of the Grand Jury testimony of the police officer and the statement furnished to the District Attorney's office, granting the cross motion for a protective order to that extent, and otherwise affirmed.