**Kimberly Ann DONATO and Salvatore M. Donato, Plaintiffs,**

v.

**John J. FITZGIBBONS, Harold G. Johnson, Thomas Hoffman, and Town of Orangetown, Defendants.**

**Matthew DeYOUNG, Plaintiff,**

v.

**John J. FITZGIBBONS, Town of Orangetown, Kimberly Donato and Salvatore M. Donato, Defendants.**

**John J. FITZGIBBONS, Plaintiff,**

v.

**Kimberly DONATO and Salvatore M. Donato, Defendants.**

Nos. 94 Civ. 3654(CLB)(LMS), 95 Civ. 4429(CLB)(LMS).

United States District Court, S.D. New York.

July 16, 1996.

Steven Beldock, Birbrower, Montalbano, Condon & Frank, P.C., New City, NY, for plaintiff Kimberly Donato.

Michael Maggiano, Fort Lee, NJ, for plaintiff Matthew DeYoung.

Robert A. Peirce, White Plains, NY, for defendants Orangetown and Fitzgibbons.

Teresa A. Klaum, Conway, Farrell, Curtin & Kelly, P.C., New York City, for defendant Donato.

Noemi S. Subotovsky, Fellows & Hymowitz, P.C., New City, NY, for plaintiff Fitzgibbons.

## ORDER

LISA MARGARET SMITH, United States Magistrate Judge.

By letter dated June 4, 1996, counsel for defendants Orangetown Police Department and John J. Fitzgibbons submitted to this Court, for *in camera* review, a copy of the Orangetown Police Department's official investigation file. The letter noted that substantial parts of the file had already been turned over during discovery, and that the withheld portions of the file were highlighted for the Court. Counsel asserted that the Court had previously "acknowledged ... [that defendant] Orangetown has a compelling interest in asserting its governmental privilege for this confidential investigation file." The only other argument asserted in that cover letter was that portions of the withheld file "clearly contain opinions, conclusions, mental impressions, work product and defense strategy, which defendant respectfully submits no plaintiff would be entitled to."

Subsequent to the submission of the above-noted letter, the parties consented to have the case before me for all purposes, pursuant to 28 U.S.C. § 636(c). I then reviewed the June 4 letter and its attachments. At a conference held before me on July 12, 1996, this issue was argued further. During that conference I noted that the reference in counsel's June 4 letter to the Court's prior acknowledgment of Orangetown's interest in

asserting its privilege was somewhat overstated. I further noted that in response to a suggestion by one counsel that they may seek an alternative means for obtaining the information in question, the Court had opined, in part, that once information is forced to be turned over "then there is inducement for investigating agencies like this to withhold this type of self-analysis, which is supposed to be in the public interest for them to do this, because it might avoid future accidents or future liability on the part of the Town." Such a statement is not as specific as counsel for Orangetown makes it appear. In any event, as I noted during the June 12, 1996 conference, there is no "self-critical analysis" privilege in New York State. *See Bank Brussels Lambert v. Chase Manhattan Bank,* 93 Civ. 5298(LMM), 1995 WL 731620 (S.D.N.Y. Dec. 8, 1995). Neither the New York Court of Appeals nor the Legislature has established such a privilege. The Appellate Division, Third Department, in considering the issue stated: "the 'self-critical analysis doctrine' .... has no support in either New York statutes or case law when the documents sought are relevant to the issues of an action." *RKB Enterprises, Inc. v. Ernst & Young,* 195 A.D.2d 857, 858, 600 N.Y.S.2d 793, 795 (1993). In light of these decisions, I am satisfied that there is no self-critical analysis in this District of the type initially asserted by defendant Orangetown. This conclusion rests, in part, on the proposition that privileges which prevent disclosure of evidence "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). Thus, insofar as the self-critical analysis privilege has been interposed as a protection for the documents submitted *in camera,* no such protection exists.

■ During the conference of June 12 I also noted that the second claim asserted by counsel, that the documents were somehow protected as work product, must also fail. The documents submitted are an incident report, supplemental incident reports, an extensive supplementary report, voluntary witness statements, and an interview with defendant John J. Fitzgibbons by a member of the Orangetown Police Department, for purposes of the accident investigation, in the presence of a P.B.A. attorney appearing on Officer Fitzgibbons' behalf. They all appear to have been dated in the latter part of May, 1993. By contrast, the first complaint in this action was filed by Kimberly and Salvatore Donato on May 18, 1994. A complaint was filed by Matthew DeYoung on December 19, 1994. The complaint was filed in 95 Civ. 4429, *Fitzgibbons v. Donato,* on June 13, 1995. That case was subsequently consolidated with the first two. Thus, there was no legal action ongoing at the time of the reports which are now claimed to be privileged. Moreover there is no indication that the investigation was conducted by or under the supervision of an attorney. It is axiomatic that the reports cannot have been work product when no attorney was involved, no litigation had commenced, and there is no indication in any of the submissions that the reports were obtained solely because of anticipated litigation. Under these circumstances there is absolutely no support for the argument that the documents are protected as work product. *See* Fed.R.Civ.P. 26(b)(3).

■ Subsequent to the July 12 conference, and at my direction, counsel for Orangetown submitted a letter brief further dated July 15, 1996, explaining the basis for claiming a privilege for the documents in question. Counsel observes, quite correctly, that claims of privilege in a case such as this one, where jurisdiction is based on diversity of the parties, are determined in accordance with the governing state law, in this case the law of New York State.[1] *See* Federal Rule of Evidence 501. The assertion of privilege is re-

---

1. For reasons which are not apparent to this Court, counsel cites *Brown v. Matias,* 102 F.R.D. 580 (S.D.N.Y.1984) (Weinfeld, J.), in support of the claim of privilege. However, Brown explicitly states that the underlying action in that case was governed by federal law, and that the issue of privilege was therefore *not* governed by state law, but "by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." Fed.R.Evid. 501; 102 F.R.D. at 581. Thus, while the analysis may be enlightening as a general exercise, it has no direct relevance to the issues before this Court.

ferred to as "an executive or governmental privilege concerning official information and investigation records[,]" which it claims is "a well settled rule." The primary case relied upon in support of this claim is *Cirale v. 80 Pine Street Corp.*, 35 N.Y.2d 113, 359 N.Y.S.2d 1, 316 N.E.2d 301 (1974). However, counsel conveniently ignores both the circumstances of that case, and the qualifications which the Court sets on this supposedly "well settled rule."

*Cirale* was an action resulting from a tragic steam pipe explosion which caused the death of seven people. Following the accident, a Board of Inquiry was convened by the New York City Commissioner of Buildings to inquire into the facts and circumstances of the accident. The wrongful death action which was subsequently commenced did not name the City of New York as a party to the action. The decision in *Cirale* was a result of an attempt by plaintiff to obtain the records of the Board of Inquiry, and was limited to the appropriate scope of disclosure against a non-party witness, as governed by New York C.P.L.R. Article 31. In assessing whether the information sought was privileged, the Court stated as follows:

> As part of the common law of evidence, 'official information' in the hands of governmental agencies has been deemed in certain contexts, privileged. Such a privilege attaches to 'confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged.'... The hallmark of this privilege is that it is applicable when the public interest would be harmed if the material were to lose its cloak of confidentiality .... It has been said that the privilege is a qualified one .... the balancing that is required goes to the determination of the harm to the overall public interest. Once it is shown that disclosure would be more harmful to the interests of the government than the interests of the party seeking the information,

> the overall public interest on balance would then be better served by nondisclosure....

> By our decision today, we do not hold that all governmental information is privileged or that such information may be withheld by a mere assertion of privilege. There must be specific support for the claim of privilege. Public interest is a flexible term and what constitutes sufficient potential harm to the public interest so as to render the privilege operable must of necessity be determined on the facts of each case. *Such a determination is a judicial one and requires that the governmental agency come forward and show that the public interest would indeed be jeopardized by a disclosure of the information.* Otherwise, the privilege could be easily abused, serving as a cloak for official misconduct.

35 N.Y.2d at 117–19, 359 N.Y.S.2d at 4–5, 316 N.E.2d at 303–04 (citations and footnotes omitted) (emphasis added).

As this extensive quotation makes abundantly clear, the "well settled rule" upon which defendant Orangetown relies is anything but clear, and it is certainly not an unlimited privilege. More importantly, it requires the party asserting the privilege to show specific support for the claim that the privilege applies, which defendant Orangetown has failed to do.[2] There is nothing in the record before this Court which would establish that not applying the privilege will result in harm to the overall public interest.

The circumstances of this case are unlike those in *Melendez v. City of New York*, 109 A.D.2d 13, 489 N.Y.S.2d 741 (1985), upon which defendant Orangetown also relies. In that case an interview of a police officer was conducted by the district attorney's office, in the course of a criminal investigation. That police officer subsequently testified in the grand jury under a waiver of immunity. The question was whether the tape recorded interview should be produced during discovery

2. In contrast to the direction of *Cirale*, defendant Orangetown argues that the other side must justify its need for the documents in question. A clear reading of *Cirale* requires the opposite—the burden is on defendant Orangetown to establish that the public interest *would* (not might) be jeopardized by disclosure.

in subsequent civil litigation. The Court found that "[t]he statement is akin to and should be treated in the same manner as grand jury testimony for the purposes of disclosure." In addition, the Court concluded that the statement was made to a public officer in the course of the officer's official duties, and in the context of a criminal investigation, and that it was therefore protected by the "public interest privilege." 109 A.D.2d at 21, 489 N.Y.S.2d at 747–48. The Court concluded that after balancing the litigant's need for production against the potential harm to the public from such disclosure, there was an insufficient showing that production was necessary to the plaintiff's case.[3] Although the ruling in *Melendez* did not require the governmental agency in question to come forward with a showing of harm to the public interest, and instead required the plaintiff to make a showing of need, the circumstances justify such a determination. The statement in *Melendez* was taken during the course of an official criminal investigation. It is well established, by the rules governing grand jury secrecy and others, that there is substantial need, and it is in the public's interest, to protect the integrity and confidentiality of such investigations. No such consideration is present in the case at bar.

In fact, the documents submitted to the Court appear to be the result of an accident investigation conducted by the Orangetown Police Department. The documents are explicitly not part of an internal affairs investigation, and there is nothing in the reports themselves which reflect that the accident investigation was anything but ordinary in a case where a Police Department vehicle was involved. Although counsel for Orangetown now claims that "[t]he investigation of this accident was an exceptional event, not undertaken in the ordinary course of police business" (Letter of Robert A. Peirce dated July 16, 1996), there is no support in the record for this statement. Counsel has chosen not to submit affidavits or other evidence which would establish the extraordinary nature of the documents in question. I am therefore constrained, on the record before me, to conclude that the documents are as they appear; that is, they are the result of an ordinary (albeit extremely thorough) accident investigation.

Unlike a case in which witnesses confide in law enforcement officials in confidence, there is nothing in the documents submitted *in camera* which indicates that any of the witnesses was at all concerned with the use which would be made of their reports. Rather, the witness statements included in the file all specifically state that they are voluntary statements. Thus, none of the indicia of public interest which are present in other cases in which the public interest privilege has been held to apply exist in this case.

The sole portion of the submitted documents which appears to be limited in any way is contained in the transcript of a tape recorded interview with Police Officer Fitzgibbons. The transcript states, at the outset, that "this proceeding, interview is going to be for the accident investigation only. This is not an internal affairs investigation." There is nothing reflected in the transcript, or in the investigator's report, to indicate that Police Officer Fitzgibbons was compelled to speak with the investigator, or that the interview was anything out of the ordinary following an accident in which a member of the Force was involved. Although it was stated that the interview was for the accident investigation only, the only use which was explicitly excluded was use of the interview in an internal affairs investigation. It cannot be concluded from this statement that the intent of the parties was to protect Officer Fitzgibbons' statement from use in subsequent civil litigation. Indeed, as set forth more fully below, as part of the accident investigation, the interview would clearly be subject to discovery in such a litigation.

■ The scope of disclosure in a civil case filed in New York State is governed by Civil Practice Law and Rules Article 31. Section 3101(g) specifically deals with discovery of accident reports. It reads, in pertinent part,

---

3. The Court left open the possibility that the statement may have to be produced at trial for purposes of impeachment.

"[e]xcept as is otherwise provided by law ... there shall be full disclosure of any written report of an accident prepared in the regular course of business operations or practices of any ... public ... entity, unless prepared by a police or peace officer for a criminal investigation or prosecution and disclosure would interfere with a criminal investigation or prosecution." In this case there has been no showing whatsoever that the accident reports were (1) prepared for a criminal investigation or prosecution, or (2) that disclosure would interfere with a criminal investigation or prosecution. Moreover, as there is no evidence before this Court that any criminal investigation or prosecution was ever commenced, and as both prongs would have to be fulfilled in order for this exception to apply, I conclude that C.P.L.R. § 3101(g) applies to this action, and that the accident reports in question are required to be provided.[4] This would include the interview of defendant Fitzgibbons, which was taken in connection with the accident investigation, and was not afforded any greater confidentiality than other parts of the accident report.

■ I also conclude that even if the accident reports and documents, in their entirety, were not prepared in the ordinary course of business, and are not subject to production under C.P.L.R. § 3103(g), that they are nevertheless not protected by the so-called public interest privilege. There has been absolutely no showing of a need for confidentiality; there has been absolutely no showing that any type of public discourse or investigative possibilities would be foreclosed, or even threatened, by disclosure of this type. Indeed, as each such determination must be made on a case by case basis, requiring disclosure in this case presents no precedent for any other case, which would also have to be reviewed based on its own facts.

Moreover, I find that there is no possibility that plaintiff would have access to this information in any other way. The statements and other information were taken very shortly after the accident, and such information cannot reasonably be obtained now, over three years after the accident took place. Thus, even if there were some governmental interest in protecting the information, I find that plaintiff's need for this information outweighs that governmental interest. This is true not only with regard to the witness statements and other information, but also with regard to the statement of defendant Fitzgibbons, which certainly cannot be reproduced by a deposition taken three years after the accident took place.

■ Counsel for Orangetown also notes in their July 15 letter brief that "[a] review of certain redacted portions of the police department's file clearly reflect various conclusions, opinions and mental impressions interwoven with factual data. As such, we respectfully request that information be redacted." However, no authority has been presented for such a request. If the issue involved work product, the Court would be required to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," Fed.R.Civ.P. 26(b)(3), but that is not the case here. Indeed, whenever a law enforcement officer investigates an accident, certain conclusions and opinions will undoubtedly be included in the reports. Those conclusions and opinions may not be admissible at trial, but that does not protect them from discovery. There being no basis for the requested redaction, the request is denied.

I am substantially distressed by what may be an appearance of bad faith on the part of Orangetown. Although they have willingly turned over some witness statements, they have withheld a witness statement, with no apparent distinction between the withheld statement and the provided statements other than the fact that the substance of the withheld statement may be harmful to their case. There is also a portion of the interview with Officer Fitzgibbons which may raise the inference that the investigating Officer was attempting to provide information to Officer

4. Of course, if a document were absolutely privileged, it would not be subject to disclosure, but that is not the case here. In fact, the language of C.P.L.R. § 3101(g) sets forth an appropriate balancing test which defines certain types of documents which should remain confidential in order to protect the public interest. This test was used by the Court in *Melendez*.

Fitzgibbons, and to coach him, in such a way as to have an impact on any subsequent statement made by him. I am unable to reach any conclusion in regard to whether either of these instances actually reflects bad faith, especially in the absence of information about other discovery which has been produced, and in the absence of any knowledge of what Officer Fitzgibbons will say during deposition and at trial, and I therefore have not taken them into account in reaching this decision. However, in the event that future events present actual evidence of bad faith, I would take such information into account in considering a belated application for costs in connection with this motion.

Defendant Orangetown is directed to produce the previously withheld documents and redacted materials within 5 business days of the date of entry of this Order.

SO ORDERED.